Ruby Kraus, Appellant, v. Cyrus F. Campe, Trading
as C. F. Campe & Company, Appellee.

Gen. No. 43,351.

38

Opinion filed February 14, 1946. Released for publication February 26, 1946.

Marcus Levy, of Chicago, for appellant; Ode L. Rankin, of Chicago, of counsel.

John A. L. Siegler, of Maywood, for appellee.

Mr. Presiding Justice Friend delivered the opinion of the court.

The plaintiff, Ruby Kraus, sued to recover a deposit of $500 earnest money placed with the defendant, C. F. Campe, a broker, on the purchase of real estate owned by Samuel and Osonna Jacobs, who were parties defendant but were dismissed on their own motion at the close of plaintiff's case. Trial by the court without a jury resulted in a finding and judgment for defendant, from which plaintiff appeals.

From the facts disclosed upon the hearing it appears that defendant is a real estate broker doing business in Chicago under the name of C. F. Campe & Company. On February 19, 1944 he represented Samuel and Osonna Jacobs and on their behalf he negotiated a contract by which they were to sell to plaintiff a two-apartment brick building and two-car brick garage for $12,000, described as "Street Number 2539 Gunnison Street." No city, town, section, township, range, county or State is mentioned in the contract and no description is given by which the property might be identified. Plaintiff paid Campe a deposit of $500 as earnest money, the balance to be paid on closing of the deal. The agreement provided that the contract and deposit money were to be held by Campe and the deal was to be closed at his office within ten days after the title should be found merchantable, with the usual provisions for prorations of standing charges. It was provided that if plaintiff should default in the contract

her deposit might, at the owners' option, be forfeited as liquidated damages. The Jacobs' title was registered under the Torrens system.

On March 29, 1944 Campe's attorney sent a letter to plaintiff by registered mail advising her that Mr. and Mrs. Jacobs had offered to close the deal at her attorney's office according to the contract, and that unless she exercised her rights within ten days "we [the Jacobs] shall consider the contract cancelled and null and void, and will forfeit your deposit."

At the close of plaintiff's case counsel for Samuel and Osonna Jacobs moved that his clients be dismissed from the proceeding on the theory, as he expressed it, that "until there is delivery of a deed there is no money belongs to Jacobs. It is still the purchaser's money." Adopting that theory, the court entered an order of dismissal as to the Jacobs, leaving the earnest money in the hands of Campe, the broker, with whom it had been deposited.

As the principal ground for reversal it is urged by plaintiff that Campe negotiated a contract which, by reason of its defective description of the property, rendered it unenforceable; that the deposit therefore never became the property of either the Jacobs or Campe; and that Campe acquired no title or possessory right in the deposit and was therefore bound to return it as money had and received and held to plaintiff's credit.

In view of these contentions it becomes necessary at the outset to determine whether the agreement, by reason of its defective description, was a valid undertaking between the parties and capable of enforcement. Upon trial of the cause defendant sought to prove by extrinsic evidence that plaintiff had inspected the premises before she entered into the agreement and thus establish the identity of the property which was otherwise not susceptible of identification from the de-

scription in the contract. The court admitted the proffered evidence, not to vary the contract, as he stated, but to place the court "in the same position as the parties." Defendant seeks to justify the court's ruling by contending that extrinsic evidence is always competent if necessary for identifying property improperly, erroneously or insufficiently described, and his counsel and the court evidently relied on *Brenneman v. Dillon,* 296 Ill. 140, *Higinbotham v. Blair,* 308 Ill. 568, and *Cumberledge v. Brooks,* 235 Ill. 249. In the *Brenneman* case Moses Dillon conveyed improved real estate which he had owned in Sterling, Illinois for many years, described in his deed to the grantee as follows: "All that plot of ground together with three story 3 block buildings, also one frame building and others partly on same block said property being situated between first and second aves. in the city of Sterling County of White Side State of Ill. and being in the addition known as Mason & Dements said property being 365 feet on the North Western Rail Road and on the south side of the North Western Railroad." The property in question had been used and occupied by the Moses Dillon Company in its business and was located between First and Second avenues in Sterling on the north side of the Chicago and Northwestern railway, and the improvements on it consisted of a three-story frame office building, another old frame building and lumber sheds. It was situated on the south side of and along the right-of-way of the railroad between First avenue and Locust street and was improved with a two-story and basement brick building, a frame building and some sheds. Because of the discrepancy in the description of the property the court permitted Dillon's grantee to introduce extrinsic evidence for the purpose of definitely locating the property from the description in the deed, and pointed out in the course of its opinion that Dillon "did own the property in controversy and it is situated in Sterling,

Illinois. It does lie on the south side of the Chicago and Northwestern railroad, adjoins its right of way 339 feet, and on the opposite side it is 352 feet long. It is in Dement & Mason's addition. Thus far there is no material defect in description. That the property was described as in Mason & Dement's addition instead of Dement & Mason's addition, and as extending 365 feet along the right of way of the railroad, we do not consider very material." It was conceded that the location of the property between First and Second avenues and the description of the improvements were erroneous, but the court held that "if the property can be definitely located from the description in the deed [such] deed will not be held void for uncertainty in description if by the aid of extrinsic evidence it can be made certain and the property located," and that "a false description may be rejected for the purpose of giving effect to the deed if the true words are sufficient to designate the land."

In *Higinbotham v. Blair* the deed in question conveyed a certain quarter section of land "except 39.20 acres," and the court held that where the description in a deed is plain and unambiguous in its terms but is followed by an exception that is ambiguous and describes nothing, the exception must be rejected and the description as originally given must prevail. In *Cumberledge v. Brooks* specific performance was sought of an alleged contract incorporated in three letters exchanged between the parties in which the property in question was described by the grantor as "my undivided interest in the Chicago lots." The prospective purchaser amplified this description in his letter of acceptance by referring to the property as the "undivided one-third interest in five lots in Chicago, now owned by Coco, Gertrude and yourself," and in a third letter the grantor requested the number of the lots and the block, and called the purchaser's attention to the fact that there were seven lots instead of five. It was

there contended, and the chancellor held, that the correspondence between the parties did not so certainly and definitely describe the subject matter of the contract as to enable the court to specifically enforce it, for the reason that it left uncertain whether five lots or seven were bargained for, and that extrinsic evidence was not admissible upon that question. The reviewing court held otherwise, however, and said: "It is true that a written contract must speak for itself as to the terms, conditions and limitations of the agreement, but as to the parties and subject matter of a contract extrinsic evidence is always competent, if necessary for their identification," and quoting from *Hayes v. O'Brien,* 149 Ill. 403, to the effect that " 'A deed or other written contract is not void for uncertainty in the description of the land sold or conveyed, *if from the words employed the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments referred to in the deed' "* (italics ours), held that "There is no conjecture as to what the parties intended. The subject matter of their negotiation was Emmett Brooks' undivided one-third interest in the Chicago lots, of which his sisters owned the other two-thirds. Whether the different tracts were divided into five or seven lots was an immaterial circumstance . . . and the agreement they made was binding on both, whether there were five lots or seven. . . . There is no difficulty, by the aid of competent evidence in this case, in finding the lots in Chicago in which Emmett Brooks owned an undivided interest. While no State, county, town, range, section, monument or measurement is referred to and the size of the lots is not given, it is definitely stated that they are the lots in Chicago which Emmett Brooks owned jointly with his two sisters, and the evidence shows that he never owned any interest in any lots in Chicago except those described in the bill. When the ownership of these lots is proved the identity of the sub-

ject matter of the contract is established." In the case at bar the property described as 2539 Gunnison street is utterly devoid of any other identification; the contract does not mention or even suggest that the Jacobs occupied the property or that it was their home, whereas in *Allen v. Bowen,* 105 Ill. 361, the testatrix described the property as "my house and lot in the town of Pakota, Illinois"; nor was any evidence offered or received as to the ownership of the property here under consideration or its specific location or description.

As against these decisions we find the case of *Heroux v. Romanowski,* 336 Ill. 297, cited and relied upon by plaintiff. In that case specific performance was sought as to "the following described real estate, situated in the county of Cook and State of Illinois, to-wit: Six three-room flats and two (2) four-room flats at the northwest corner of Belden avenue and Lamon avenue, commonly known as 2302–2310 North Lamon avenue and lot, section ...., township ...., north range ...., east of the third P.M." The court held that in order to entitle a party to specific performance of a contract the terms of the agreement must be clear, certain, unambiguous and free from doubt, citing *Olson v. Forsberg,* 332 Ill. 266; that a contract for the sale of land must definitely point out the land to be conveyed or furnish the means of identifying the land with certainty; and that if it fails in either respect a court of equity will not decree its specific performance, citing *Kopprasch v. Satter,* 331 Ill. 126. In conclusion it stated: "This court takes judicial knowledge of the fact that in the county of Cook there are many cities and villages, in any one of which, for aught that appears in the amended bill of complaint, there might be a Belden avenue, Lamon avenue or Palmer street. The descriptions of the properties in the contract in question are so uncertain as to require parol evidence to locate the properties, and as these ambiguities ap-

pear on the face of the writing itself, the uncertainty in the descriptions cannot be cured by extrinsic evidence. (*Doyle v. Teas*, 4 Scam. 202; *Kohlbrecher v. Guettermann*, 329 Ill. 246.) The contract is so uncertain and ambiguous that a court of equity will not decree its specific performance.''

The same principle is enunciated by the courts of other states. In *Hammond v. Hacker*, 93 Fla. 194, 111 So. 511, the court held that a contract to convey land will not be specifically enforced where no State or county is designated. Likewise in *Harbers v. Brune*, 245 S. W. 746 (Court of Civil Appeals of Texas), it was held that a contract for the sale of land, describing it as ''about 300 acres of land on the west side of the Frelsburg road, and said land being in the Zimmerscheidt survey,'' was not subject to specific performance because of insufficiency of the description in not disclosing in what county or State the land was located. From these decisions we take the rule to be that if the property can be definitely located from the description of the deed, extrinsic evidence is admissible to identify the particular property sought to be conveyed, but that where the property is incapable of being identified from the deed or contract and no city, county, town or State is indicated, and the description in the contract is so uncertain as to require parol evidence to locate the property, the uncertainty in the description cannot be cured by extrinsic evidence.

As the result of the foregoing conclusions, it follows that Campe submitted an unenforceable contract which he himself prepared, and under the established rule in this State, a real estate broker has not earned a commission by the negotiation of an unenforceable contract of sale (*Wilson v. Mason*, 158 Ill. 304), and an earnest money deposit may be recovered when it appears that a contract is unenforceable (*Gardner v. Shekleton*, 253 Ill. App. 333). In the *Wilson* case the court adopted what it designated as the

"true rule," *i.e.,* "that the broker is entitled to his commissions, if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract. If, after the making of such a contract, even though executory in form, the purchaser declines to complete the sale and the seller refuses to compel performance, the broker ought not to be deprived of his commissions. He has done all that he can do when he produces a party who is able, and, in binding form, offers to purchase upon the proposed terms. An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller and the purchaser must be bound to each other in a valid contract. So, where the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase. [Citing numerous cases.]" If the contract before us could have been held to be a valid agreement, there would be considerable force in defendant's contention that he earned his commission and was entitled to apply the earnest money in payment of his services; but inasmuch as we are constrained to hold that the agreement was invalid for lack of certainty, *Wilson v. Mason* and cases cited therein are authority for the rule that the earnest money deposit may be recovered when the contract turns out to be unenforceable.

In view of these conclusions it is unnecessary to discuss the other contention made by plaintiff that the dismissal of Samuel and Osonna Jacobs amounted to a disclaimer of the earnest money which plaintiff would therefore be entitled to recover from defendant as money had and received.

For the reasons indicated the judgment of the municipal court is reversed, and the cause is remanded

with directions to enter judgment in favor of plaintiff.
*Judgment reversed and cause remanded with directions to enter judgment in favor of plaintiff.*
SCANLAN and SULLIVAN, JJ., concur.