[File No. 7372]

ROBERT E. GUST, Respondent, v. SAM A. WILSON and A. Y. MORE, Defendants, and A. Y. MORE, Appellant

(60 NW2d 202, 38 ALR2d 1371)

Opinion filed September 30, 1953

*Burnett, Bergeson, Conmy & Whittlesey,* Fargo, for Appellant.

*Roy K. Redetzke,* Fargo, for Respondent.

*Roy K. Redetzke,* for Respondent.

GRIMSON, J. Plaintiff brings this action to recover $500.00 from the defendants. In his complaint he alleges that the defendant, More, was a real estate broker employed by the defendant, Sam A. Wilson, to sell certain real estate; that a contract was entered into between the plaintiff and Wilson for the purchase of said real estate; that plaintiff deposited with More $500.00 as part of the purchase money; that Wilson was to furnish abstracts of title showing merchantable title to said property in Wilson; that upon examination of the abstracts certain encumbrances and defects in the title were found; that Wilson failed to remedy such defects; that plaintiff was ready and willing to go on with the agreement but on the failure of Wilson to cure the defects in the title he cancelled the contract and de-

manded the return of the $500.00 which was still in the possession of More and asks for judgment against both defendants.

Both defendants answer. More admits the contract and claims he acted only as agent for Wilson; admits the receipt of the $500.00; claims he credited Wilson therewith and applied it on his commission due from Wilson for making the sale to the plaintiff; admits that Wilson was to furnish abstracts showing merchantable title but claims he has no knowledge of the dispute between the plaintiff and Wilson; that plaintiff's cause of action, if any, is against Wilson.

Wilson makes a general denial but admits the contract with plaintiff for the purchase of certain lands and the deposit with More by the plaintiff of the $500.00. Wilson claims he furnished the abstracts showing clear title except for some encumbrances which he agreed to take care of out of the purchase price and claims to have been willing and able to perform under the terms of his contract but that plaintiff said he was unable to sell a certain North Dakota farm and requested that the deposit be returned to him. Wilson claims further that he so informed defendant More who has failed to repay the $500.00 but diverted the same to his own use and "without the scope of his authority."

When the case came up for trial counsel for all parties waived a jury and agreed in open court to stipulate the facts and afterwards a written stipulation was filed from which "this law suit" was "to be decided."

From the stipulations it appears that A. Y. More was a real estate agent employed by the defendant, Wilson, to find a purchaser for certain real estate. He induced the plaintiff to become such purchaser. On Oct. 21, 1948 the plaintiff signed an offer to defendant More to purchase said premises on certain terms which offer was accepted by defendant Wilson. Plaintiff paid to defendant More $500.00 which according to the contract, Exhibit A, was "to be applied as a part of the purchase price." Regarding this payment the stipulation of counsel provides:

"That the said plaintiff, as a security, as well as for the performance of said agreement on his part and to secure the performance thereof on the part of the said defendant, then and there deposited in the hands of the defendant, A. Y. More, for

said defendant, Sam A. Wilson, the sum of Five Hundred Dollars ($500.00) cash, as part of said purchase money, in accordance with the terms and conditions of said written agreement and identified as plaintiff's Exhibit 'A' herein."

The $500.00 deposit still remains in the hands of defendant More.

The contract stipulated that Wilson was to furnish an abstract of the title to the premises described in the contract showing merchantable title free and clear of encumbrances, including taxes. The contract provided the transaction was to be completed on or before Nov. 10, 1948. The defendant, Wilson, furnished such abstracts but upon examination by plaintiff's attorney defects in the title were found of which the defendants were informed. Defendant Wilson made no effort to perfect the title. Plaintiff was ready to make payments according to the contract if defendant would remedy the defects enumerated. Defendant More notified defendant Wilson that unless title was cleared so the deal could be closed he, More, would bring suit for his commission. Finally, on Feb. 22, 1949, plaintiff cancelled the contract on account of defendant's failure to furnish title and demanded return of the $500.00 payment. Defendant Wilson advised defendant More to return the $500.00 to the plaintiff. More refused, claiming to have applied that $500.00 on his commission due from Wilson for his services as Wilson's agent in securing plaintiff as purchaser of the premises involved.

Thereafter this action was commenced against both Wilson and More for the return of the $500.00 as money had and received. The case was tried to the court on the stipulation of facts. The court found for the plaintiff and ordered judgment against both defendants. Defendant More appeals from the judgment assigning as errors that the court erred in determining "the defendant A. Y. More was liable in any amount to the plaintiff in this action" and in awarding "judgment in favor of the plaintiff and against the defendant A. Y. More," and in refusing to award a "judgment dismissing the action on its merits as to defendant A. Y. More." Further, the defendant, More, assigns as error that the court erred in not rendering and entering findings of fact and conclusions of law.

There exist in this State two types of appeal for review in

the Supreme Court of judgments of a district court or a county court with increased jurisdiction. One type of appeal provides for the review of the rulings of the trial court upon assignments or specifications of error; and the other type provides for what is known as a trial de novo in the Supreme Court. The first type of appeal was in effect under the Laws of the Territory of Dakota and came into effect in the State upon the establishment of the government of the State of North Dakota. The second type of appeal came into being in 1893. See Laws 1893, Ch 82; Christianson v. Farmers Warehouse Ass'n, 5 ND 438, 67 NW 300, 32 LRA 730. Said Chapter 82 was amended in 1897 (Laws 1897, Ch 5), and was embodied in subsequent codifications and revisions and is embodied without material change in Sec 28-2732 NDRC 1943:

"On appeal in any action tried by the court, without a jury, whether triable to a jury or not, if it appears to the supreme court that any material evidence was excluded, the supreme court may issue a mandate to the trial court to take such evidence without delay and to certify and return it to the supreme court, and all proceedings in the supreme court shall be stayed pending the return of such evidence. A party desiring to appeal from a judgment in any such action shall cause a statement of the case to be settled within the time and in the manner prescribed by chapter 18 of this title, and shall specify therein the questions of fact that he desires the supreme court to review, and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court. Only such evidence as relates to the questions of fact to be reviewed shall be embodied in this statement. If the appellant shall specify in the statement that he desires to review the entire case, all the evidence and proceedings shall be embodied in the statement. The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and shall either affirm or modify the judgment or direct a new judgment to be entered in the district court. However, the supreme court, if it deems such course necessary to the accomplish-

ment of justice, may order a new trial of the action. In actions tried under the provisions of this section, failure of the court to make findings upon all the issues in the case shall not con-stitute a ground for granting a new trial or reversing the judg-ment."

A party to an action aggrieved by a judgment rendered against him in an action tried to the court without a jury is not required to take an appeal under the statute providing for a trial anew in the Supreme Court. He may if he desires take an appeal and assign such errors as arise upon the judg-ment roll. Thus, he may appeal and assert that the findings of fact do not justify or support the judgment. If he desires to have the entire case reviewed, all the evidence and proceedings must be embodied in the statement of the case and all that is required is that he specify in his statement that he desires a review of the entire case. If he desires to have the Supreme Court review certain questions of fact, he may have such ques-tions reviewed and in such case only the evidence relating to such questions of fact are required to be embodied in statement of case. The authority of the supreme court to try a case de novo on appeal is derived solely from the statute. Littel v. Phinney, 10 ND 351, 87 NW 593. See, also Tronsrud v. Farm Land & Finance Co., 18 ND 417, 121 NW 68.

In this case the notice of appeal states "You will please take notice that *the appellant demands a trial de novo in the Su-preme Court and a retrial of said cause and the whole thereof in the Supreme Court* upon the merits and upon the specifica-tions of error served herewith." In the order settling the state-ment of case certain documents and papers including a stipula-tion of facts entered into by the attorneys for the plaintiff and defendants; a transcript of the trial proceedings. Plaintiff's ex-hibits A, B, C, and D, inclusive are identified and settled as a statement of the case. The order states that the judge of said court does "further certify and identify the following exhibits, to-wit: Plaintiff's Exhibits A, B, C and D inclusive and de-fendants' exhibit 1, 1A, 2A, and 3A, inclusive and he does hereby make and constitute said records and exhibits, including *demand for trial de novo* as the statement of the case herein including

the judgment roll." While the pleadings in the action and the judgment and order for judgment are part of the judgment roll and need not be included in the statement of the case this does not affect the order settling the statement of the case. So it seems clear that the appeal here is one under NDRC 1943, 28-2732 for a trial de novo in the Supreme Court and that the appeal is governed by the provisions of law applicable to an appeal of that type.

It is obvious that there are certain rather fundamental differences between the effect of findings of fact on an appeal triable anew in the Supreme Court and on an appeal where the review in the Supreme Court is predicated upon assignments of error. On an appeal for a trial de novo the Supreme Court is not bound by the findings of the trial court either as to the law or the facts. Englert v. Dale, 25 ND 587, 142 NW 169. Where a new trial is demanded in the Supreme Court specifications of error are not required. In Plott v. Kittelson, 58 ND 881, 885-886, 228 NW 217, this Court said:

"In such case the following provision of the statute applies, 'but if the appellant shall specify in the statement that he desires a review of the entire case, all the evidence and proceedings shall be embodied in the statement.' In such case, appellant does not specify any particular facts, but complies with the statute when he specifies in the statement that he desires to review the entire case. It is then incumbent upon the supreme court to review the entire record and try anew all the questions of fact in the entire case and dispose of the same whenever justice can be done without a new trial. Since the appellants demand a retrial of the entire case, the specifications of error were not necessary."

On an appeal where a new trial is demanded in the Supreme Court (NDRC 1943, 28-2732), "the Supreme Court has the power and it is made its duty to review and weigh the evidence that was adduced upon the trial and transmitted to the Supreme Court as a part of the record on appeal, and to 'find the facts for itself' (Doyle v. Doyle, 52 ND 380, 389, 202 NW 860, 863), 'independently of the trial court's findings.' Merchants Nat. Bank v. Collard, 33 ND at p 565, 157 NW at p 491." Belt v.

Belt, 75 ND at p 732, 32 NW2d 674. "The failure of the trial court to make findings upon all the issues in the case shall not constitute a ground for granting a new trial or reversing the judgment." Sec 28–2732 NDRC 1943.

In Chaffee-Miller Land Co. v. Barber, 12 ND 478, 97 NW 850, this Court had occasion to consider assignments of error predicated upon the alleged refusal and failure of the trial court to make findings of fact of all issues in an action tried to the court without a jury. In the opinion in the case this Court said:

"We are of opinion that none of the assignments of error is well founded. The judgment must therefore be affirmed.

"The first and second assignments are based upon the assumption that the alleged refusal and failure of the trial court to make findings of fact upon all of the issues raised by the pleadings in an action tried under section 5630, Rev Codes 1899, constitutes reversible error. This is a mistake. This section, among other things, expressly provides that, 'in actions tried under the provisions of this section, failure of the court to make findings upon all the issues in the case shall not constitute a ground for granting a new trial or reversing the judgment.' Findings of fact are not abolished by this section, but it declares that the failure of the court to make findings upon all the issues shall not constitute reversible error. The chief purpose of the practice created by section 5630 is to secure a speedy and final determination of cases. To accomplish that purpose, a party who is aggrieved because of the failure of the trial court to find upon any issue is deprived of the power of securing a reversal upon appeal or a new trial in the district court, and is compelled to avail himself of the right given by this section to bring up the evidence on his appeal, and have the error corrected in this court, where a new and final judgment may be ordered without the delay incident to a new trial in the district court." 12 ND at pp 483–484.

The judgment rendered in this case was specific and certain. It adjudged that the "Defendants and each of them are indebted to the plaintiff in the sum of $500.00" and it is further ordered and adjudged "that the plaintiff have judgment against the defendants and each of them in the sum of $500.00." The judgment was entered irregularly because of the failure of the court

to make and file findings of fact. But the judgment was subject to appeal. The defendant More chose to appeal from the judgment and demanded a trial anew in the Supreme Court. He thus evoked the power of the Supreme Court to review the evidence and determine the facts and also to determine what judgment should be entered. We will proceed to do so.

This action is brought for money had and received. It is not based on the contract but upon the implied agreement, arising from the circumstances regarding the deposit, to return the deposit if conveyance could not be made. The rule is that an action for money had and received will lie whenever one person has possession of money which in equity belongs to another and which he should in equity and good conscience restore. Miller v. Shelburn, 15 ND 182, 186, 107 NW 51. See also Kicks v. State Bank of Lisbon, 12 ND 576, 98 NW 408; Norris v. Cohen, 223 Minn 471, 27 NW2d 277, 281, 171 ALR 178; Zapf Realty Company v. Brown, 26 Ga App 443, 106 SE 748; Simmonds v. Long, 80 Kan 155, 101 P 1070, 23 LRA NS 553; Jensen v. Miller, 162 Wis 546, 156 NW 1010; If the contentions of the plaintiff are confirmed an action for money had and received will lie.

The only question for the determination on this appeal is whether defendant More is liable for the return of the $500.00 deposit.

Counsel for defendant More contends that More is not liable in this case because he was the known agent of defendant, Wilson, and that he cannot be held liable for the earnest money paid by plaintiff because of the failure of Wilson to carry out the contract for the purchase and sale of property to which contract defendant More was not a party. 12 CJS Brokers, Sec 144 P 357. That seems to be the general rule in cases where the agent acts solely as an agent; where the principal has an absolute right to the money after it has been paid to the agent; where the deposit has in good faith been paid by the agent to his principal; where the agent is not in any way personally involved in the contract. Huffman v. Newman, 76 NW 409, 55 Neb 713; Cohen v. Barry, 108 NYS 573; Yentis v. Mills, 299 Pa 25, 148 A 909; Beeman v. May, 193 Misc 684, 85 NYS2d 122; Bogart v. Crosby, 80 Cal 195, 22 Pac 84; Levine v. Field, 114 NYS 819; Garrison

v. Edward Brown & Sons, 25 Cal2d 473, 154 P2d 377; Ware v. Frank Meline Co. (Cal App) 53 P2d 1033; Kraus v. Campe, 328 Ill App 37, 65 NE2d 127; Brunetto v. Ferrara, 167 Pa Super 568, 76 A2d 448; Walter v. Four-wheel Drive Auto Co. 213 Wis 559, 252 NW 346; Wright v. Merritt Realty Co. 148 Wash 380, 268 P 873.

There are, however, many circumstances in connection with such a transaction where the agent has been held liable. See McKeen v. Boothby, 129 Me 324, 152 A 53; Zapf Realty Company v. Brown, 26 Ga App 443, 106 SE 748; Kenney v. Walden, 28 Ga App 810, 113 SE 61; Pancoast v. Dinsmore, 105 Me 471, 75 A 43, 134 Am St Rep 582; Hearsey v. Pruyn (NY) 7 Johns 179; Mead v. Altgeld, 136 Ill 298, 26 NE 388; Read v. Riddle, 48 NJL 359, 7 A 487; Smith v. H. E. Orr Co. 147 P 1, 84 Wash 561.

In all these cases the agent or broker was held liable for earnest money which has not been turned over to the principal when the principal has been unable to complete the contract for sale or rescinded the contract. Each case is controlled by its particular facts.

In the case at bar the evidence shows that the defects in the title of the property involved existed at the time that the deposit was made. The abstracts of title show that there were encumbrances against the premises involved and that defendant Wilson's title to some of the land was through a tax deed from the State of Minnesota. Upon the tax deed matter the parties had stipulated "that title to real property located in the State of Minnesota is not merchantable if said title is based upon tax sale proceedings." Such being the case it was impossible for Wilson to meet the terms of that contract at that time. He was not in position to pass merchantable title to plaintiff and consequently could not claim the deposit. The most he had was an inchoate right to the money. Before that would ripen into an absolute right he had to be able to perform his part under the contract by making the title merchantable. In 2 Am Jur Agency, Sec 335, p 264, it is said: "An agent to whom money has been paid for his principal through error, *or under other circumstances existing at the time* of payment that would entitle payer

to recover it back from the principal, is individually liable to the payer for the money so received so long as it remains in his hands and there has been no alteration in the situation of the agent towards his principal with relation to such payment. (Emphasis supplied.) In 12 CJS Brokers, Sec 144, p 356, the rule is laid down that "A purchaser may recover from the broker a payment which has not been turned over to the principal where the latter is unable to complete his contract of sale." See also McKeen v. Boothby, supra; Pancoast v. Dinsmore, supra.

The Am. Law Institute's Restatement of the Law on Agency, Sec. 33, p 745, puts it this way :

"An agent who has received things from another for a disclosed or partially disclosed principal has a duty to return them or their proceeds if the other rescinds the transaction by which they were received for a cause existing at the time of their receipt, to the extent that the agent has not, before notice of rescission and in good faith, changed his position."

In 3 C.J.S. Agency, Sec. 217 p. 126, it is said ". . . If the money still remains in the hands of the agent it may ordinarily be recovered back from him where there is proper ground for its recovery as against principal although some authorities differentiate between the cases in which the ground for recovery existed at the time of payment and those which arose later."

It seems to be well established that where money is paid to an agent to which his principal is not in fact entitled at the time the agent is liable for its return as long as the agent stands in his original position. 2 Am. Jur. Agency, Sec. 335, p. 264.

In the case at bar the cause of the rescission of the contract was the defect in the vendor's title. That defect existed at the time of the payment of the deposit to More. The title to the property More was trying to sell was not merchantable so that the vendor, Mr. Wilson, could not pass title. He never perfected the title. He never became entitled to the $500.00 deposit with More. The plaintiff would have been entitled to recover the deposit from Wilson had it been turned over to him. He is now entitled to recover it back from More since More never paid it over to his principal.

There is another circumstance in the case at bar which differ-' entiates it from the cases holding the agent not liable. The contract provides that the $500.00 is "*to be* applied as part of the purchase price." That indicates some future time. Then the stipulation says: "That the said plaintiff, as a security, as well as for the performance of said agreement on his part and *to secure the performance thereof on the part of said defendant*, then and there deposited in the hands of the defendant, A. Y. More, for said defendant, Sam A. Wilson, the sum of Five Hundred ($500.00) Dollars in cash as a part of said purchase money, in accordance with the terms and conditions of said written agreement, and identified as plaintiff's Exhibit A herein." (Emphasis supplied.) The reasonable construction of the contract and stipulation is that the $500.00 was deposited as security for the performance of the contract by Wilson as well as plaintiff. That does not give the defendant, Wilson, any right to that money until he was ready to perform his part of the contract. Not until then is it contemplated by the parties that the title to the money passes to Wilson. In the meantime More is merely a stake holder. After the contract was rescinded because of Wilson's failure to perform More was holding that fund as trustee for the plaintiff and became liable for the refund thereof to the plaintiff who had deposited the money. At that time no one else had any right to that money. In Martin v. Allen, 125 Mo App 636, 103 SW 138, 139, the court says:

"An agent, by the express or implied agreement of himself and the parties to a contract, may assume the position of trustee with relation to money or property involved in the transaction, . . . It is true that the sum thus deposited, in the contingency stated, is to be treated 'as part of the consideration of the sale;' but the clear intent and purpose of the entire arrangement required defendant to hold the deposit in his custody until the time came for paying it over to the party entitled to receive it." See also Read v. Riddle, 48 NJL 359, 7 A 487; Kenney v. Walden, 28 Ga App 810, 113 SE 61; Murrah v. Shirley, Texas Civil Appeals (1922), 237 SW 307; White v. Taylor, 113 Mich 543, 71 NW 871; 1 Mechem on Agency, Sec 445, p 1070.

One of the defenses of defendant, More, is his claim that he

applied the $500.00 on the commission due him from Wilson for bringing him the plaintiff as a purchaser ready, willing and able to buy the land. The evidence shows clearly, however, that he did not attempt to make such application until after Wilson had failed to perfect the title and plaintiff had rescinded the contract. A letter to him dated Jan. 13, 1949, was sent to him notifying him thereof and making a demand on him for the refund. On March 17, 1949, about a month before this suit was brought and some six months after he received the $500.00 his attorney wrote Wilson that "Unless you see to it that the title is cleared so that the deal may be closed, Mr. More has instructed us to bring suit against you for the commission." It appears, therefore, that More had notice of the inability of Wilson to deliver title before he made any attempt to apply the $500.00 on the commission. It was too late then for him to change his position with regard to this fund. He may be entitled to a commission from defendant Wilson. Neff v. Schrader, 49 ND 213, 191 NW 466. That, however, is a question between him and Wilson. Wilson claims that More diverted the $500.00 to his own use "without the scope of his authority" and directed More to return the deposit of $500.00 to the plaintiff. Not only did More lack authority from Wilson to appropriate this money to his own use, but, as we have found, Wilson himself, never had clear title to the money. More was holding it in trust for this plaintiff and had no right to apply it for any purpose than to return it to plaintiff when Wilson failed to perform his part of the agreement. Clearly the attempted application by More of the $500.00 to this commission from Wilson is no defense to this action.

Wilson, the vendor, never became entitled to the deposit. The title to the money never passed to him. More, the agent, never obtained any more right to the money than his principal. As stake holder or trustee he is liable to the purchaser, the plaintiff, who has never lost title to the fund conditionally deposited with More.

The judgment of the trial court is affirmed.

MORRIS, C. J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.