## Richmond

JAMES C. HICKS AND LORENE N. HICKS v. HYLTON HOWELL, ET AL.

October 9, 1961.

Record No. 5307.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson and Carrico, JJ.

*Aubrey E. Strode,* for the plaintiffs in error.

*T. Warren Messick,* for the defendants in error.

EGGLESTON, C. J., delivered the opinion of the court.

James C. Hicks and Lorene N. Hicks, sometimes hereinafter called the plaintiffs, brought a civil warrant in the Bedford county court against C. R. Rickman, Sr., Mary L. Rickman, Hylton Howell and J. H. Lynch to recover the sum of $505 which the plaintiffs claimed they had deposited with Howell and Lynch on account of the purchase price of certain real property the Rickmans had agreed to sell and the Hickses had agreed to buy. The contract of sale had been effected through the services of Howell and Lynch, real estate brokers and auctioneers, and was rescinded when the Rickmans were unable to deliver a marketable title to the property as agreed.

Upon the filing of an affidavit of substantial defense the case was removed to the Circuit Court of Bedford county where, by consent of the parties, it was tried by the court without a jury. Upon the evidence adduced the lower court entered judgment in favor of the plaintiffs against the Rickmans for the amount sued for, but denied a recovery against Howell and Lynch. From this judgment the plaintiffs have appealed, claiming that under the evidence they are entitled to a judgment against Howell and Lynch as well as against the Rickmans for the amount sued for.

These are the facts: On September 23, 1959, the Rickmans entered into a written contract with Hylton Howell and J. H. Lynch, real estate brokers, whereby the Rickmans gave the brokers the exclusive right to sell at public auction, on or before November 1, 1959, a tract of land and certain personal property thereon owned by the Rickmans and located near Moneta in Bedford county. Under the terms of the contract Howell and Lynch were to pay all costs of advertising the sale and were to receive from the Rickmans the sum of $500 cash, payable on the date of sale. The Rickmans further agreed to convey the real estate "by good and sufficient deed, with general warranty title."

Pursuant to this contract Howell and Lynch advertised the property for sale at public auction on October 17, 1959, and the real estate was bid in by James C. and Lorene N. Hicks for the sum of $5,050. Immediately thereafter a contract of sale and purchase was prepared

by Hylton Howell, Jr., an employee of the auctioneers, and signed by the Rickmans and the Hickses. It provided that the purchasers were to pay $5,050 for the property, $2,550 in cash on the date of closing the transaction, which was fixed at November 17, 1959, and $2,500 by the assumption of a deed of trust thereon. The vendors agreed to convey the property with a general warranty deed and the usual covenants of title and that it would be free and clear of all liens except that mentioned above. The contract further recited that the purchasers had paid the sum of $505 on account of the purchase price, receipt of which was acknowledged by the vendors, and that the vendors would pay the brokers' commissions for making the sale.

On the date of the sale and at the time of the execution of the contract of sale and purchase, the Hickses paid to Hylton Howell, Jr., the agent of the brokers, the sum of $505 in cash. Howell, Jr., tesified that shortly after the contract had been signed he met Rickman "around behind the house" and Rickman inquired when he would receive an accounting for the purchase deposit. Howell, Jr., said that he replied, "right now," and gave Rickman $5.00. Later, he said, he delivered the balance of $500 to Howell, Sr.

Rickman testified that he did not receive the $5.00, or any part of the cash deposit. Howell, Sr., testified that he received the sum of $505 and deposited it in his "escrow account" in a Roanoke bank and later told Mrs. Hicks that he had done so.

Shortly after the sale a local firm of attorneys employed by the Hickses to examine the title to the property reported that there were recorded liens thereon in excess of $7,000, and that unless these were cleared the Rickmans would be unable to give a clear title to the property.

Mrs. Hicks testified that on or about November 5, 1959, she telephoned Howell, Sr., and advised him of the situation. Howell told her that he would "do all in his power" to see that the sale was consummated, but if that could not be done she "had nothing to worry about" since the money was "in escrow in a bank in Roanoke." Later he visited the Hickses and repeated these assurances to them. Howell admitted having made these statements. However, when it later became apparent that the sale could not be consummated, by letter dated January 15, 1960, the plaintiffs demanded that Howell and Lynch return the deposit, which they refused to do, claiming that they had applied $500 to the payment of their earned commissions and had paid the balance of $5.00 to Rickman.

While the duty of the broker with respect to a purchase-money deposit made with him has not been heretofore presented to this court, it has been frequently considered in other jurisdictions and the controlling principles are well settled. As is said in 5 Am. Jur., Auctions, § 55, pp. 485, 486:

"The authorities are practically uniform in holding that upon an auction sale of real estate, the auctioneer receives a deposit of earnest money in the capacity of a stakeholder and, in the interim before the sale is completed, should not pay the deposit money to either party without the consent of the other. Thus, an auctioneer is liable to the vendor for wrongfully returning a deposit to the vendee, even though he did so under a mistaken belief that the vendor's title was defective. On the other hand, in the event that the title proves bad, or the vendor fails to complete the conveyance, or there has been a misdescription in a material matter of real property sold under circumstances in which the purchaser was entiled to rely upon the description, especially in the case where the untrue description has been made fraudulently, the auctioneer becomes responsible to the buyer for the return of the deposit. Of course, where the understanding of the parties contemplates the immediate payment by the auctioneer to his principal, before the close of the transaction, of money paid by the purchaser as a down payment, the auctioneer may not be considered a stakeholder as respects such payment. * * * "

Again, in 8 Am. Jur., Brokers, § 130, p. 1060, it is stated: "If earnest money is paid to a broker, and the contract is broken by the principal, the broker, notwithstanding that he has disclosed his principal, is liable to the other party for the return of the earnest money, unless he has in good faith paid it over to his principal." See also, 7 C. J. S., Auctions and Auctioneers, § 13-b(2), pp. 1269, 1270; Annotations: 23 A. L. R. 125; 38 A. L. R. 2d 1382.

A full discussion of the subject is found in the recent case of *Gust* v. *Wilson*, 79 N. D. 865, 60 N. W. 2d 202, 38 A. L. R. 2d 1371, where the facts and issues are quite similar to those involved before us. There Wilson engaged More, a real estate broker, to sell certain real estate. More negotiated a sale of the property to Gust who entered into a contract to purchase and deposited $500 with More as part of the purchase money. The contract between Wilson, the vendor, and Gust, the purchaser, provided that the vendor was to furnish a marketable title to the property. When an examination showed that the title was defective, Gust rescinded the contract and demanded that

More return to him the $500 deposit. More refused, saying that he had credited the deposit on account of the real estate commission which Wilson owed him. Gust then sued Wilson and More for the return of the deposit money and recovered a judgment against both.

In affirming the judgment the appellate court held that the broker, acting as agent for the vendor, held the deposit as a stakeholder and after the failure of the vendor to perform became a trustee under the obligation to return the deposit to the purchaser. It disposed of the broker's contention that he had the right to apply the deposit to the payment of his commission by pointing out that Wilson, the vendor, never became entitled to the deposit, that the title to the money never passed to him, and consequently his agent, the broker, had no right to take the money which he was under the obligation to return to the purchaser and apply it to his (the broker's) claim against the vendor.

We agree with these principles which are clearly applicable to the case before us. Moreover, the conduct of the defendant, Howell, shows that he recognized the obligation to refund this deposit to the plaintiffs. He told Mrs. Hicks that he was holding the fund in escrow, which was an admission that he was a stakeholder. When he further assured her that she "had nothing to worry about," if the sale were not consummated, this was a plain indication that the deposit would in that event be refunded.

In their brief Howell and Lynch argue that the lower court has found as a fact that they turned this deposit over to Rickman and that he in turn paid them $500 in satisfaction of their claim for commissions. Hence, they say, under the authorities above cited,[1] they were not stakeholders of the deposit and were under no obligation to refund it to the plaintiffs.

The trouble with this contention is that there is no evidence on which the lower court could base a finding that the deposit was paid to Rickman and that he in turn paid the commission charges. It is true that the contract of sale and purchase recited that $505, the amount of the deposit in dispute, was paid to Rickman on account of the purchase price. But the undisputed oral testimony shows that this was not a fact. Rickman testified that he received none of this money. While Howell, Jr., said that he paid Rickman $5.00 out of the amount of the deposit, Howell, Sr., admitted that he received the full amount

[1] See 7 C. J. S., Auctions and Auctioneers, § 13-b(2), pp. 1269, 1270; *Gust* v. *Wilson, supra,* 60 N. W. 2d, at page 207, and cases there cited.

of the deposit and put it in his escrow account in a Roanoke bank. Since Howell, Sr., one of the defendants, is bound by his own testimony, we must take it as established that he received the full amount of the deposit. There is no claim by Howell, Sr., that he paid any part of this fund to the Rickmans. Since the Rickmans were unable to perform their contract of sale they never became entitled to the deposit. Consequently, the brokers had no right to apply this fund to the payment of a debt which the Rickmans owed them. The deposit should have been returned to the purchasers, the Hickses, who in equity and good conscience were entitled thereto.

■ Howell and Lynch argue that since they were merely agents of their known principals, the Rickmans, judgment should go only against the latter. The ready answer to this contention is that since Howell and Lynch are in possession of the fund in controversy judgment should go against them. As is said in 12 C. J. S., Brokers, § 144-b, p. 356: "A purchaser may recover from the broker a payment which has not been turned over to the principal where the latter is unable to complete the contract of sale, * * * ." See also, Restatement of the Law of Agency, 2d Ed., § 339, pp. 97, 98; 2 Am. Jur., Agency, § 335, p. 264; *Gust* v. *Wilson, supra,* 60 N. W. 2d, at pages 207, 208.

For these reasons the judgment in favor of the defendants, Howell and Lynch, is reversed. A judgment in favor of the plaintiffs, James C. Hicks and Lorene N. Hicks, will be here entered against the defendants, Hylton Howell and J. H. Lynch, in the sum of $505, with interest thereon from January 15, 1960, the date the plaintiffs demanded the return of the deposit.

*Reversed in part and final judgment.*