Raymond J. SPIELMAN, Plaintiff and Respondent,

v.

John M. WEBER, Defendant and Appellant.

No. 8029.

Supreme Court of North Dakota.

Nov. 27, 1962.

Rehearing Denied Jan. 10, 1963.

Zuger, Zuger & Bucklin, Bismarck, for defendant and appellant.

Gallagher & Hodny, Mandan, for plaintiff and respondent.

STRUTZ, Judge.

This is an action to recover damages for personal injuries to the plaintiff and for

damages to the plaintiff's pickup truck which he was driving when he collided with a snowplow operated by the defendant.

The collision occurred in daylight at a time when visibility was excellent, on U. S. Highway No. 83 at a point approximately ten miles north of the city of Bismarck. At the time of the collision, the defendant was operating the truck of a snowplow in a northerly direction on such highway. A Mr. Roberts was with the defendant, raising and lowering the plow blade as occasion required. At the same time, the plaintiff was operating his pickup truck in a southerly direction on said highway, driving toward the city of Bismarck.

Approaching the point of impact from the south, the road goes over a small hill, dips slightly, and then begins a long rise to the north, curving to the northwest just beyond the point of impact. Where such curve occurs in the highway, there is a hill to the west which restricts visibility ahead. The point of impact was just south of this curve.

On the day of the accident, the plaintiff left his home in Underwood, at approximately seven o'clock in the morning, to attend a mechanics' school in Bismarck which was scheduled for eight o'clock. As the plaintiff was proceeding toward the point of impact, he approached the curve in the highway. It is not clear at just what distance he sighted the defendant's snowplow. In a deposition taken before trial, the plaintiff testified that he had seen the snowplow when it was a distance of 900 feet ahead of him on the highway. At the trial, however, he testified that he first saw the snowplow when it was 600 feet away. The defendant and the operator of his plow testified that they saw the plaintiff approaching at a distance of approximately 900 to 1,000 feet. The highway patrolman testified that the curve is an unfolding curve and that an approaching vehicle can be seen, as one rounds the curve, at a distance of approx-

imately 800 feet ahead. At the point of impact, the paved portion of the highway was thirty-four feet wide, with shoulders four feet wide on either side of the highway.

Snow had fallen during the night, and a light wind had blown the highway clear of snow except for certain portions of the west lane. In protected areas, the snow at some points was several inches deep, but all of it was on the west portion of the west traffic lane of the highway. As the defendant proceeded northward, he plowed the snow from the west portion of the highway wherever it lay on the surface. This made it necessary for the defendant to proceed on the west, or wrong, side of the road and in the lane of traffic occupied by oncoming vehicles.

The record further discloses that the defendant's snow-removal equipment had a maximum width of nine feet and that, as the defendant was removing snow from the highway, the left wheels of such equipment were being operated on the left, or west, shoulder of the road.

The plaintiff first saw the defendant at a minimum distance of 600 feet. He was attracted by the headlights and the blue blinking warning light on top of the equipment, and he knew that it was some sort of highway equipment. The plaintiff admitted that he knew that, at times, highway equipment is used on the left side of the road.

Plaintiff testified that, when he first saw the defendant's equipment, he was driving "approximately 35 miles an hour." Other testimony in the record would indicate that plaintiff might have been traveling at a greater rate of speed. He removed his foot from the accelerator, but at no time did he apply his brakes. He became certain of the fact that such equipment was working in his lane of traffic when the vehicles had approached each other to a point where they were separated by about 200 feet. The plaintiff testified that, at that point, he still

was traveling at the same rate of speed as when he first saw the defendant:

"Q. Now, about what speed were you going when you were 200 feet from the plow?

"A. At approximately 35 miles an hour."

Plaintiff also testified that, at that time, when he had reached a point 200 feet from the defendant's equipment, although a Coca Cola truck was approaching from the south, some distance behind the snowplow, the east lane of the highway was clear. Asked whether the east traffic lane of the highway was clear when he reached a point 200 feet from the snowplow, the plaintiff testified:

"A. The road was clear, yes.

"Q. Pardon?

"A. Yes, it was clear.

"Q. . The east lane.

"A. Yes."

When the vehicles were approximately seventy-five feet from each other, the plaintiff turned right and drove off the highway. At approximately the same moment, the defendant attempted to avoid the plaintiff by turning off the highway to his left, and a collision occurred off the paved portion of the road on the west shoulder.

On these facts, the plaintiff demands judgment against the defendant for injuries which he sustained. The defendant, on the other hand, denies negligence and contends that, in any event, the plaintiff was guilty of contributory negligence, barring recovery.

The trial court found for the plaintiff on the theory that the defendant was negligent in operating his snow-removal equipment on the left side while approaching a curve in the highway; that the plaintiff's failure to use his brakes was not the proximate cause of the collision, nor did his failure to use his brakes constitute negligence; that the plaintiff was confronted with a sudden emergency and that an ordinarily prudent person would have reacted in approximately the same manner as did the plaintiff; that the plaintiff was in his proper lane and the snowplow was not, and that plaintiff's reaction, of turning suddenly to the right, was the natural reaction of an ordinarily prudent person, under the circumstances, when confronted with a sudden emergency.

From judgment for the plaintiff the defendant has appealed, demanding a trial de novo on the issue of liability only.

■ In an action triable to a jury, the findings of the jury on questions of negligence and contributory negligence will not be disturbed on appeal where the findings are supported by credible evidence and the evidence is such that reasonable men could draw different conclusions therefrom. Olson v. Kem Temple Ancient Arabic Order of Mystic Shrine, 78 N.D. 263, 49 N.W.2d 99; McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Schweitzer v. Anderson (N. D.), 83 N.W.2d 416; Pundt v. Huether (N.D.), 100 N.W.2d 431.

■ Where, however, a trial de novo is demanded on appeal from a judgment in an action tried to the court without a jury, the appellate court must review and weigh the evidence and find facts for itself, independent of the trial court's findings. In doing this, the findings of the trial court will be considered and will be given appreciable weight. Gust v. Wilson, 79 N.D. 865, 60 N.W.2d 202; 38 A.L.R.2d 1371; Umland v. Frendberg (N.D.), 63 N.W.2d 295; Strobel v. Strobel (N.D.), 102 N.W.2d 4; Dockter v. Crawford (N.D.), 65 N.W.2d 691; Shong v. Merchants' State Bank, Hutchinson, Minn. (N.D.), 70 N.W.2d 907; Stark County v. Koch (N.D.), 107 N.W.2d 701.

This court will not hesitate to apply the principle that, in reviewing a case tried without a jury, it will give appreciable weight to the findings of the trial court. But that principle will not be applied to relieve this court from the necessity of per-

forming its lawful duty to try anew questions of fact in the entire case. In other words, although the decision of the trial court is entitled to appreciable weight, it is the duty of this court to carefully review and analyze the evidence and to render a just decision based on all of the evidence in the case. Hendricks v. Porter (N.D.), 110 N.W.2d 421; Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808.

One who travels upon a public highway, by day or by night, has the right to assume that such highway will not be obstructed unlawfully, or in such a manner as to cause injury to him while he himself is in the exercise of due and reasonable care. While our statute does provide that all vehicles operating on the public highways of the State shall be driven on the right half of such highways (Sec. 39-10-08, N.D.C.C.), such requirement does not apply to highway vehicles and equipment "while actually engaged in work upon the surface of a highway." Sec. 39-07-05, N.D.C.C. Therefore, the operator of the snowplow was lawfully on the west portion of the highway from which snow was being removed. Since such snow-removal equipment was lawfully on the left, or in plaintiff's lane, of the highway, removing snow, and was by such operation lawfully obstructing the highway, the operator of the equipment had the right to expect that other drivers would use reasonable care to avoid danger because of such lawful obstruction of the road. The plaintiff therefore was required to operate his vehicle with reasonable care in order to avoid collision with such lawful obstruction on the highway.

Let us now consider the evidence in this case to determine whether the plaintiff exercised such reasonable care. It is impossible to lay down a hard and fast rule on the matter of due care, and what is "due care" will always depend on the facts and the circumstances of each case.

The plaintiff's own testimony discloses that he was traveling "approximately" thirty-five miles an hour when he first observed the highway equipment on the road at a distance of about 600 feet ahead of him. He did not apply or attempt to apply his brakes, but continued down the road at the same speed until he was approximately 200 feet from such equipment. It was then that he realized that the snowplow was in his lane of traffic. Having been alerted, however, at a distance of 600 feet that highway equipment was working on the highway and knowing, as he admitted that he did know, that such equipment might be working on either the right or the left side of the highway, he should have been prepared to apply his brakes instantly when, at a distance of 200 feet, he realized that the plow was in his lane of traffic. But the record discloses that at no time prior to the actual collision did the plaintiff attempt to use his brakes.

We agree with the trial court in his statement that a motorist confronted with a situation of imminent danger, not of his own making, who is required to make an instant decision, is not guilty of negligence if he fails to make the wisest choice. This rule is elementary, and no authority need be cited. But in this case the emergency which arose to face the plaintiff was, at least partially, created by his own conduct in failing to slow his vehicle when he first saw the road equipment 600 feet or more ahead of him. In any event, the emergency which he faced was created in part by his failure to apply his brakes when, at 200 feet, he knew that the snowplow was working in his lane of travel and, further, in not passing the plow on the left when that side of the highway was clear of travel. The record shows that the paved portion of the highway at this point was thirty-four feet wide; that the defendant's equipment had a maximum width of nine feet; and that it was being operated with its left wheels completely off the west portion of the pavement. The plaintiff thus had at least eight feet of the west lane and all seventeen feet of the east lane of travel for passing the snow equipment. Yet he made no attempt to use it.

Therefore, while on a trial de novo this court will give appreciable weight to the findings of the trial court, where the evidence is such that we are clearly of the opinion that the lower court was mistaken in its decision, we must reverse. The trial court's findings are entitled to only such weight as the appellate court, in good conscience, feels that they should receive.

We are persuaded that the facts in this case do not entitle the plaintiff to recover from the defendant. The judgment of the district court is therefore reversed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.