Karnes BURWICK, Plaintiff and
Respondent,

v.

Louie SAETZ, Defendant and Appellant.

Civ. No. 8440.

Supreme Court of North Dakota.

Dec. 7, 1967.

Reichert, Greenwood, Swanson & Murtha, Dickinson, for plaintiff and respondent.

Floyd B. Sperry, Bismarck, for defendant and appellant.

STRUTZ, Judge.

This is an appeal from a judgment of the district court of Dunn County rendered in an action tried by the court without a jury. A trial de novo is demanded in this court.

The plaintiff was engaged in the hide, fur, and junk business at Mott, North Dakota. As part of this business, he took on the retail sale of a line of batteries from one Tony Schafer, of Bismarck, who was a distributor of batteries manufactured by the Waterless Battery Company. The plaintiff had secured about fifty batteries from Schafer prior to 1958. Sometime early in that year, Schafer discontinued his connection with the Waterless Battery Company and his area was taken over by the defendant.

At the time the defendant first called on the plaintiff after taking over Schafer's territory, the plaintiff was instructed to issue a warranty card with each battery sold. On this card the plaintiff, as retailer, was to indicate the type of unit in which the battery was to be installed, whether passenger car, truck, bus, tractor, commercial vehicle, or diesel. The period covered by such warranty was dependent upon the type of unit in which the battery was used. Each battery carried the following guaranty:

"The Waterless Battery Company guarantees the purchaser of a Waterless Battery that if it fails under normal service, anytime within ten years of the date of purchase, it will be replaced or repaired, *free of charge,* or full purchase price refunded, at our option, by any authorized Waterless Battery Dealer.

"One-half of the above guarantee is applicable to batteries used for truck, bus, tractor, commercial, or diesel service.

"This guarantee is void if battery shows signs of physical damage such as cracked or broken case or posts, or evidence of battery being opened or cells removed, or evidence of improper installation or use."

The defendant admits that, under this guaranty, the plaintiff was authorized to replace all defective batteries which he sold. But defendant contends that his agreement with the plaintiff provided that all defective batteries which were replaced by other batteries by the plaintiff were to be held by the plaintiff subject to the defendant's inspection and examination, because the guaranty did not cover batteries that had been broken or abused by rough handling.

Although the plaintiff had the burden of proof, his evidence is rather unsatisfactory. He kept very few records and relied largely upon his memory in testifying in regard to the various transactions. He did admit that, although he had received a total of 150 Waterless batteries from the defendant, all of which he claims were defective and

which eventually had to be replaced, he paid the defendant for only 100 of them, the other fifty being replacement batteries furnished by the defendant.

Because of the poor records kept by both parties, it was impossible to fix exact dates for many of the transactions testified to, other than by dates found on the guaranty cards, some of which were available. The plaintiff testified that, sometime during the first half of 1959, he phoned the defendant and informed him that a number of the Waterless batteries which he had sold were proving to be defective. The defendant thereupon advised the plaintiff that he would send to him some replacement batteries. It is admitted by the plaintiff that, pursuant to such telephone call, the defendant did send a Mr. Ell to the plaintiff's place of business with approximately thirty-five replacement batteries. When the defendant agreed to send such replacement batteries, he advised the plaintiff that it was necessary for the plaintiff to hold all defective batteries until they were inspected and examined by the defendant. However, when the defendant, some months later, stopped at the plaintiff's place of business to check the batteries, he was told by the plaintiff that all of the Waterless batteries had proved to be defective and that the plaintiff had replaced all of them with a new and different make of battery which he had purchased from a dealer in Dickinson. The plaintiff further informed the defendant that the Waterless batteries, all of which he claimed had proved to be defective, had been junked and that it would not be possible for the defendant to inspect or check them since they no longer were on hand. The plaintiff testified that he had paid $15.75 to $16 for each of such new batteries used to replace the defective Waterless batteries.

On this record, the trial court found that the plaintiff had bought and paid for 100 Waterless batteries from the defendant, all of which were defective; that for the purpose of replacing these 100 defective batteries the plaintiff had purchased 100 batteries of a different make, at a cost to him of $15 per battery, and that the plaintiff therefore was damaged in the sum of $1,500; that of the 150 batteries received by the plaintiff from the defendant fifty had been replacement batteries and were not paid for by the plaintiff; that the plaintiff had returned thirty-five or forty of the defective batteries to the defendant for inspection and thereafter had junked all the remaining 110 batteries for one dollar each; that the defendant was entitled to a credit for money so received by the plaintiff for the junked batteries, or the sum of $110.

The court thereupon ordered judgment to be entered for the plaintiff in the sum of $1,500, less the sum of $110 for junked batteries, or for a total sum of $1,390, and further ordered that the plaintiff have interest on such sum from January 2, 1961.

As previously stated, the defendant has demanded a trial de novo in this court. Where a trial de novo is demanded on appeal from judgment in an action tried to the court without a jury, the appellate court must review the evidence and find the facts for itself, independent of the trial court's findings. In doing so, the findings of the trial court will be given appreciable weight. Spielman v. Weber (N.D.), 118 N.W.2d 727; Gust v. Wilson, 79 N.D. 865, 60 N.W. 2d 202, 38 A.L.R.2d 1371.

But the principle that the appellate court must give appreciable weight to findings of the trial court will not be used by the appellate court to escape its responsibility of performing its lawful duty of trying anew the facts in the entire case. Thus, although the findings of the trial court are entitled to appreciable weight, it is the duty of the appellate court to review and analyze the evidence and to render a decision based upon the evidence in the case, as found by the appellate court. Hendricks v. Porter (N.D.), 110 N.W.2d 421; Spielman v. Weber, supra.

The trial court found that the evidence does not disclose that the agreement of the parties required the plaintiff to retain and hold the defective batteries which were returned to him until the defendant had inspected and examined them. The court further found that when the defendant sent thirty-five replacement batteries to the plaintiff in 1959, without demanding that the plaintiff comply with such claimed agreement, the defendant, in any event, waived this requirement. Assuming that the trial court is correct in this conclusion, the record clearly discloses that the plaintiff was definitely instructed to hold all batteries which he took back as defective, at least when the defendant agreed to send the thirty-five replacement batteries to the plaintiff. In this connection, the plaintiff testified on cross-examination as follows:

"Q. Now, is it true that Mr. Saetz explained to you, that with each battery you were to give the customer who bought it one of these guarantees indicated by defendant's exhibit fifteen? (plaintiff's #15?)

"A. Yes, the top half.

"MR. SPERRY: uh huh.

"Q. And you had read that and understood the meaning, had you not?

"A. Yes.

"Q. And Mr. Saetz talked to you and explained that to you?

"A. That's right.

"Q. And also told you he wanted you to keep any batteries that were returned and which were claimed to be defective, so that they could be examined?

"A. That's right.

"Q. And you agreed to do that?

"A. Yes."

Somewhat later, the plaintiff further testified as follows:

"Q. Now, is it correct that Mr. Saetz told you that he wanted these returned batteries preserved, so that he could examine them?

"A. Yes. He said he could take them back and doctor them up and sell them for about five ($5.00) dollars a piece.

"Q. Well, did he also mention to you, he wanted to also to examine them, to find out just what was wrong with them?

"A. Yes, he wanted to check them."

Thus there can be no argument that the plaintiff knew that his agreement with the defendant required him to hold, for defendant's inspection and examination, the defective batteries which were returned to him, and that this was clear to the plaintiff at least from the time the defendant agreed to send the thirty-five replacement batteries. Yet, with this knowledge, the plaintiff did not hold any of the defective batteries, but junked every one of them within a period of about one year.

The trial court found that a letter dated November 16, 1959, from the defendant to the plaintiff, after many of the batteries were found to be defective, was a waiver of the necessity of the plaintiff's holding such batteries for the defendant's inspection. We have examined this letter, and in it the defendant advised the plaintiff that it was the defendant's intention to replace every defective Waterless battery with a battery of a different make, regardless of the expense involved. We do not interpret that letter to be a waiver of the requirement on the plaintiff's part to hold all defective batteries so that they could be inspected and checked by the defendant.

■ Thus, whether the evidence establishes that the duty of the plaintiff to hold all defective batteries returned to him was a part of the original agreement between

the parties, as contended by the defendant, or whether it was not, it cannot be disputed that the plaintiff clearly understood it to be his duty to hold such batteries from the time the thirty-five replacement batteries were furnished to him. We find that it was the duty of the plaintiff to hold such defective batteries which were returned after that time. We further find that the defendant's letter, referred to above, stating that it was the defendant's intention to replace every defective battery with a battery of a different make, was not a waiver of the agreement which required the plaintiff to hold defective batteries for the defendant's inspection and examination.

 While it is generally true that where no specific time is set for the performance of an oral agreement, parties have a reasonable time in which to perform [Gunderson v. Burbidge (N.D.), 75 N.W. 2d 757], where the agreement between the parties did not require the defendant to check or inspect the defective batteries within a specified time, time cannot be held to be of the essence of their agreement. Time is not considered as of the essence of a contract unless, by the contract's terms, it is expressly so provided. Sunshine Cloak & Suit Co. v. Roquette Bros., 30 N.D. 143, 152 N.W. 359, L.R.A.1916E, 932.

Thus the defendant had the absolute right, under the admitted agreement of the parties, when thirty-five replacement batteries were furnished to the plaintiff, to check and inspect the defective batteries which thereafter were returned to the plaintiff. The plaintiff could not take it upon himself to destroy these defective batteries without at least serving some notice upon the defendant. Without such notice, the defendant's failure to inspect and check the batteries within a period of from seven months to something over a year, was not, in our opinion, an unreasonable delay.

We find, therefore, that as to the defective batteries taken in by the plaintiff, which were the thirty-five replacement batteries delivered to him in 1959, from which time he admittedly knew that he was required to hold all defective batteries for inspection, the plaintiff had the duty, under the agreement with the defendant, to hold such batteries for inspection. It was the duty of the plaintiff to at least give the defendant reasonable notice before junking these defective batteries. Before the plaintiff can compel the defendant to pay for defective batteries, he, the plaintiff, must show that he himself has fulfilled all conditions which the agreement between the parties required him to perform. Sunshine Cloak & Suit Co. v. Roquette Bros., supra.

For reasons stated herein, the judgment of the district court is modified to deduct from the amount due the plaintiff from the defendant the sum of $15 for each of the thirty-five replacement batteries. The judgment therefore is reduced from $1,390 to $845, the plaintiff to have interest from January 2, 1961, on such sum. As so modified, the judgment is affirmed.

TEIGEN, C. J., and PAULSON, KNUDSON and ERICKSTAD, JJ., concur.