Mabelle F. CHARLSON and Harriet C. Charlson, Plaintiffs and Appellants,

v.

The CHARLSON ESTATE, a domestic corporation; C. C. Charlson, N. J. Charlson and Ella C. Charlson, individually and as surviving directors of The Charlson Estate, a dissolved domestic corporation; the following named heirs at law of T. E. Charlson, deceased; Louise Charlson, Marie E. Wilkinson; Edith C. Lenz, Kenneth Charlson, Wallace F. Charlson, Eleanor C. Mengel, and Evelyn C. Perkins; the unknown heirs, creditors, devisees or legatees of T. E. Charlson, deceased; and all other persons unknown claiming any estate in, or lien or encumbrance upon, the real property described in this Complaint, Defendants and Respondents.

No. 7548.

Supreme Court of North Dakota.

March 5, 1956.

Burk, McIntee & O'Connell, Williston, for appellants, Ward B. Lewis, Minneapolis, Minn., of counsel.

Bjella, Jestrab & Neff, Williston, for respondents.

JOHNSON, Judge.

This is an action to quiet title to the West Half of the West Half (W½W½) of Section 35, Township 155 North of Range 96 West of the Fifth Principal Meridian, Williams County, North Dakota. The defendants in the action are the surviving directors of the Charlson Estate, a dissolved corporation, and the heirs of a former director now deceased. The purpose of the action is to set aside and declare null and void perpetual royalty assignments covering the property involved in the action of 2¼% to each of the following persons, to wit: T. E. Charlson, N. J. Charlson, Ella C. Charlson, and C. C. Charlson. The action is in statutory form.

The defendants answered denying the allegations of the plaintiffs' complaint and asserting that they have certain estates and interest in or liens or encumbrances upon the real property involved in the action adverse to the plaintiffs, and by way of a defense and counterclaim allege that on December 7, 1938, the Charlson Estate, a corporation, made, executed and delivered to C. C. Charlson, Ella C. Charlson, N. J. Charlson, and T. E. Charlson by a good and sufficient instrument in writing, an assignment of 2¼% perpetual non-participating royalty in and to all of the oil, gas and other hydrocarbons produced and saved from the land involved in the action, free of cost to the royalty owner, and set forth the recording thereof. It also sets forth that T. E. Charlson is deceased, and that the defendants, Louise Charlson, Marie E. Wilkinson, Edith C. Lenz, Kenneth Charlson, Wallace F. Charlson, Eleanor C. Mengel, and Evelyn C. Perkins, are the heirs at law, devisees, legatees, and successors to the interest of T. E. Charlson, deceased, and the owners and holders of the 2¼% royalty issued to him by the Charlson Estate, a corporation.

The defendants also allege that the action did not accrue within six years, Section 28–0116, NDRC 1943, or within ten years before the commencement thereof, Sections 28–0115 and 28–0122, NDRC 1943.

The plaintiffs by way of reply set up that an oil and gas lease was executed and delivered to the California Company dated September 29, 1937, covering the real property involved in this action as well as other land; that the Charlson Estate, a corporation, in consideration of $3,400 adopted a resolution dated April 15, 1938. The facts, however, show that the resolution was actually adopted April 15, 1939. They also as-

sert that the perpetual oil and gas royalty assignments were fraudulent and contrary to the terms of the resolution; that they were made with the intent to cheat and defraud the plaintiffs; that Mabelle F. Charlson never received a 3½% perpetual oil and gas royalty assignment and never knew that the assignments issued by the Charlson Estate, a corporation, on December 7, 1938, were perpetual; that under the terms of the alleged agreement contained in the resolution, the assignments issued were limited to the oil and gas lease of the California Company covering the land at the time of their issuance.

At the end of the presentation of the plaintiffs' action the defendants moved to dismiss the complaint of the plaintiffs for the reason that it had been conclusively proved that they knew all of the facts and conditions, and that the testimony shows that the action is barred by the statute of limitations as pleaded in the answer, and for the further reason that the plaintiffs had failed to prove fraud. The motion was resisted. Defendants presented no evidence.

After considerable discussion the court dismissed the action. In its discussion the trial court made statements that it could find no evidence of deliberate fraud or misrepresentation on the part of any of the parties. Findings of fact and conclusions of law were drawn up and signed by the court upon the facts as disclosed by the record and the evidence. Judgment was entered thereon. Thereafter the plaintiffs made a motion to amend the findings to correct the description of the land involved in the original findings and to include therein a provision for 3½% perpetual royalty to the plaintiffs, Mabelle F. Charlson and Harriet C. Charlson.

A stipulation was thereafter entered into by the respective attorneys for the parties agreeing to the amendments and the findings were amended accordingly. These findings, as well as the original findings, state that the "said royalty assignments in perpetuity were not made falsely or fraudu-

lently." The plaintiffs appeal to this court and request and demand a trial de novo.

No argument is presented upon the issue that this action is barred by the statutes of limitations set forth in the answer. The trial court did not pass upon that issue. It must be deemed abandoned.

Two issues are presented in this action:

1. Was the dismissal of the action by the trial court a dismissal without prejudice or a determination of the action on the merits?

2. Were the perpetual oil and gas royalty assignments conveyed by the Charlson Estate, a corporation, on December 7, 1938, to T. E. Charlson, N. J. Charlson, Ella C. Charlson and C. C. Charlson fraudulently issued to them, and contrary to the terms of the alleged agreement set out in the resolution adopted by the corporation on April 15, 1939?

We will first dispose of the plaintiffs' and appellants' contention that the dismissal of the action was without prejudice and that the determination thereof on the merits was erroneous and requires a reversal of the judgment.

It is argued that the dismissal of this action comes within the terms of Section 28–0801, NDRC 1943 as a dismissal without prejudice.

It is true that the defendants made a motion to dismiss the complaint of the plaintiffs at the conclusion of the testimony offered by them on the ground that they had failed to prove any fraud in the issuance of the perpetual assignments of royalty.

There is no indication that the defendants desired to present any testimony. It appears that the case had been fully tried and the parties so considered. All the parties treated the dismissal as a determination upon the merits. The court made findings of fact and conclusions of law upon the merits including a finding that the perpetual

assignments of royalty were not fraudulent. Then the plaintiffs moved to amend the findings of fact, conclusions of law, and the judgment to correct the description of the land and to the effect that Mabelle F. Charlson and Harriet C. Charlson are the owners of all of the surface and of a 3½% perpetual royalty in and to all the oil, gas and other hydrocarbons produced and saved from the land. Thereafter the attorneys for the respective parties stipulated that the findings of fact, conclusions of law and the judgment be amended to correct the same and to include the ownership of 3½% perpetual royalty in Mabelle F. Charlson and Harriet Charlson. Amended findings and conclusions of law and order for judgment and judgment were entered accordingly. This amendment of the findings and judgment amounted to a request for inclusion of affirmative relief to the plaintiffs.

■ The plaintiffs and appellants appealed to this court and have requested a trial de novo. The settlement of the statement of this case and the certification thereof so provided. These actions of the parties indicate that they felt that the trial court had decided this case upon the merits. Obviously they treated the determination of the action by the trial court as involving the merits. If this was a mere dismissal of the plaintiffs' action without prejudice, it would not constitute a final determination by the trial court of the action, and of course, it is clear that there would then be no basis for a request and a demand to try the case anew. The case was decided on its merits.

We now come to the question whether or not the perpetual oil and gas royalty assignments issued on December 7, 1938, by the Charlson Estate, a corporation, to C. C. Charlson, Ella C. Charlson, T. E. Charlson and N. J. Charlson were fraudulently issued and contrary to the alleged agreement set out in the resolution adopted by the corporation on April 15, 1939.

The property involved in this action was originally owned by the Charlson Estate, a corporation. In 1938 the directors of the corporation were T. E. Charlson, N. J.

Charlson, C. C. Charlson and Ella C. Charlson. The property was encumbered by a mortgage. It was deemed desirable to attempt to liquidate this indebtedness by a compromise with the mortgagees or their assigns. Mabelle F. Charlson advanced $3,400 for that purpose. The liquidation of the mortgage indebtedness was eventually accomplished. The negotiations back and forth concerning this transaction appear in the form of letters and other documents.

The asserted fraud in this case, it is claimed, arises out of an alleged conflict between the terms of the resolution passed by the Charlson Estate, a corporation, April 15, 1939, as construed by the plaintiffs, and the perpetual oil and gas royalty assignments issued prior thereto. We will quote the pertinent portions of the resolution insofar as they apply to the issues here involved:

"Resolved, that this corporation sell and convey the 720 acres described in a deed from the Barstads to S. Charlson and filed for record in the office of the Register of Deeds in and for Williams County and State of North Dakota, on April 13th, 1917, in Book 53 of Deeds, on page 607, to Mabelle F. Charlson, for a consideration of One Dollar ($1.00) and other valuable consideration, as hereinbefore set forth, and the president and secretary of this corporation, be and they are hereby authorized and directed to execute and deliver to Mabelle F. Charlson, a deed or deeds to the said last above referred to lands, in the corporate name, with the corporate seal of this corporation, subject to the incumbrances now of record against said lands; also to an oil and gas lease from this corporation to The California Company of San Francisco, California, and also subject to assignments of twelve and one-half per cent royalty *thereunder*, and be it further

"Resolved, that this corporation issue assignments for twelve and one-half per cent royalty *under the above referred to oil and gas lease* on the 560 acres of lands described in Book 159

of mortgages, on page 160, in the office of the Register of Deeds of Williams County, North Dakota, to the following persons, to wit: Mabelle F. Charlson six and one-half per cent, N. J. Charlson one and one-half per cent, Ella C. Charlson one and one-half per cent, and C. C. Charlson one and one-half per cent, and the president and secretary of this corporation be and they are hereby authorized and directed to execute the above assignments and attach the corporate seal thereto, and be it further

"Resolved that this corporation issue assignments for twelve and one-half per cent royalty *under the above referred to oil and gas lease*, on the West half of the West half of Section thirty-five (35) Township one hundred fifty-five (155) North, Range ninety-six (96) West, to the following persons, to-wit: Mabelle F. Charlson three and one-half per cent, T. E. Charlson two and one-quarter per cent, N. J. Charlson two and one-quarter per cent, Ella C. Charlson two and one-quarter per cent, C. C. Charlson two and one-quarter per cent, and the president and secretary of this corporation, be and they are hereby authorized and directed to execute the above assignments, and attach the corporate seal thereto." (Emphasis supplied.)

On April 12, 1939, the Charlson Estate, a corporation, deeded to Mabelle F. Charlson, the land involved in this action, "subject to the unpaid taxes and twelve and one half per cent oil and gas royalty, which oil and gas royalty has heretofore been assigned." It was recorded May 29, 1943. Prior to the adoption of the resolution the corporation had made assignments of perpetual oil and gas royalties to C. C. Charlson, T. E. Charlson, N. J. Charlson and Ella C. Charlson by separate instruments, dated December 7, 1938, giving and granting to each one of them 2¼% royalty of all the oil, gas, and other hydrocarbons produced and saved from the land involved in this action, as well as different percentages to the same parties on other land which

was eventually lost by the corporation. In the habendum clause of the assignment of royalty to each of these parties appears the following: "and it does hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises." C. C. Charlson testifies that at the same time a 3½% perpetual oil and gas royalty assignment was executed and forwarded to Mabelle F. Charlson. She claims she never received this assignment and was not aware of the fact that the assignments of December 7, 1938, to the parties mentioned were perpetual assignments. At the time the deed was issued to Mabelle F. Charlson the premises involved in this action, together with other land, had been leased to the California Company, a corporation, by oil and gas lease dated September 29, 1937, recorded in Williams County for a primary term of 8 years. This lease was surrendered in writing on the 17th day of October 1939, and the surrender document was recorded in the office of the register of deeds on the 30th day of October 1939.

It is the contention of the plaintiffs that upon the surrender of this lease, Mabelle F. Charlson became the owner of all the land and the minerals. In January 1949 Mabelle F. Charlson leased the land for oil and gas to A. M. Fruh and Thomas W. Leach. This lease was assigned to the Amerada Petroleum Corporation. Thereafter and on May 16, 1952, and before the commencement of this action Mabelle F. Charlson deeded one half of the minerals in and under the property involved in this action to Harriet C. Charlson.

The plaintiff, Mabelle F. Charlson, was aware that royalty assignments had been made prior to the delivery of her deed dated April 12, 1939. The correspondence indicates that. Whether the certified copy of the resolution of April 15, 1939, accompanied her deed is not entirely clear, although there is testimony that it was forwarded to her at the time of the delivery of her deed. A certified copy of the resolution, however, was in her possession. It apparently was the only copy of the resolu-

tion in existence. No record of the resolution was found in the minutes of the Charlson Estate, a corporation. It had been approved by her husband, N. A. Charlson.

The Charlson Estate was a corporation which had been created to handle the Charlson Estate properties. It was dissolved in 1941. In the spring of 1938 the principal properties owned by the corporation were a 560 acre tract in Williams County referred to as the "Barstad Farm". It also owned an adjoining 160 acres heretofore described which is the subject of this action, and sometimes called the "Mile Quarter". Sometimes both properties are collectively referred to as the "Barstad Farm." In addition to these properties the corporation owned 320 acres of land in McKenzie County. The "Barstad Farm", 560 acres, was covered by a first mortgage which had been assigned to one Petters. It was also covered by a second mortgage for $30,000 given to George B. McLaughlin, a Minneapolis attorney, who was representing creditors of the corporation, and serving as their nominee. Early in 1938 the corporate creditors were threatening to foreclose their second mortgage. The defendant, Carl C. Charlson, also known as C. C. Charlson, an officer and director of the corporation, went to Minneapolis to discuss the matter with his sister-in-law, Mabelle F. Charlson, sometimes referred to as Mrs. Charlson, and her husband, N. A. Charlson, a brother of Carl. He is sometimes referred to in the correspondence as Alvin, his middle name. Carl Charlson negotiated with the creditors who agreed to accept the sum of $3,400 in settlement of their claims. Mrs. Mabelle F. Charlson agreed to advance that sum. She did advance that sum of money. It then appears that negotiations took place with reference to giving Mabelle F. Charlson something of value so that she could eventually recover back her advances on behalf of the corporation. We will refer to pertinent parts of the correspondence to arrive at the nature of the agreement eventually reached by the parties. The negotiations back and forth concerning the transaction appear in the form of letters and other documents,

and cover a considerable period of time. It is evident that all the correspondence is not in evidence, but it is possible from the correspondence in evidence to arrive at the nature of the agreement that was ultimately consummated. Apparently no promises were made to Mabelle F. Charlson at the time that she made her loan to the corporation. The negotiations all came after that. It does appear, however, that upon settlement of the creditors' claims, the California oil and gas lease was delivered to Mabelle F. Charlson, but it was not assigned to her.

It is clear that in the spring of 1938 after the money had been paid by Mrs. Charlson, an agreement was reached to give her a 1% oil and gas royalty assignment in the 720 acres. In a letter dated May 14, 1938, written by Carl Charlson, he said, in part:

"As it now stands the only assignment we can make is to pay for the money you have put out. And in addition to the royalty we have already assigned you, we can issue 1% royalty on the 320 acre McKenzie County land. This land is not yet leased, but that would make no difference. We will draw up a new resolution to cover this land and also forward the assignment to you. The 560 acres under foreclosure to Petters cannot be considered until such time as it is brought back into the corporation. Any attempt on our part to assign any royalty might jeopardize our agreement on the moratorium. But we can have an understanding that we give you 1% providing we get it back into the corporation.

"It is our purpose to give you this royalty in consideration of the $3400, and Alvin's ⅛ will come to him out of the remaining royalty.

"We hope we have made this clear to you, and we want to make the settlement to you to your entire satisfaction."

It will be noted that this correspondence makes no reference to limiting the assignment of royalty to any lease. The refer-

ence to Alvin's sharing in the royalty indicates an intent to divide the royalties among the brothers and sisters interested in the Charlson Estate.

The mortgage held by Petters was foreclosed and the land was eventually lost to the corporation. Mabelle F. Charlson returned the 1% royalty assignment. Further negotiations took place looking towards a solution of the attempt to pay her back the money she had advanced or give her property for it. On October 5, 1938, Alvin wrote:

"Dear Ella and Folks, * * * Now Nordin will not leave here until sometime after we receive your answer to this letter. He has wanted both Mabelle and I to accompany him. But this we feel would be a needless expense. We told him that Carl would take care of him, which I am sure he will be glad to do * * *. However, since there is no certainty about oil, we wondered if you wouldn't think with us that something tangible might be given Mabelle, so if the worst comes to worse, there might be someway that the money advanced might be gotten back. We have in mind the Barstad Farm (720). Of course, *the oil royalties to be divided as if the Estate owned it so you would reap just the same if oil comes * * *."* (Emphasis supplied.)

Here it is apparent that Alvin is proposing on behalf of his wife to Ella and the others a division of the oil royalties so that *you,* meaning them, would reap the same if oil comes. The proposal of a division of the oil and gas lease was not made dependent upon the existence of any particular oil and gas lease. It is a proposal for a division of the oil and gas royalties on a permanent basis.

On October 7, 1938, Carl replied to Alvin's letter of October 6th. He says:

"Dear Folks,

"Just received your letter. Your proposition is 100% with us. (Ella

and I). T. E. is not home but I am sure that you can go ahead on your deal. It might be the best way out. The Estate could deed to Mable the 720 A. and it might be best to handle the other properties in the same transaction, so if you get title to the 720 A except the 6% royalty to the 4 of us * * *."

Here we have an offer and an acceptance of a division of the oil and gas royalties on a permanent or perpetual basis. All were to share—*"royalties to be divided as if the Estate owned it * * * so you would reap just the same if oil comes."* (Emphasis supplied.)

Apparently sometime after this correspondence, Mr. Nordin went to Williston and an arrangement was made to deed the "Mile Quarter" to Mabelle and divide the royalties. On November 23, 1938, Carl wrote:

"Regarding the papers, will get these out as soon as T. E. get so he can write his hands have been swollen and very painful * * *."

This indicates that some papers had been prepared and sent for signature.

In a letter dated December 13, 1938, Carl apparently refers to a letter which is not in evidence. He says:

"I am so sorry that my letter caused you pain and sorrow. We had hoped that we could have carried our end through without a hitch. As far as the delay in returning the papers, we might say that, at the time we received them I took them up to T. E.'s and asked him to look them over, but due to his illness said he did not feel able just then. Now as to being sick I know that he was suffering and there was nothing to do until he felt better. When he had looked them over later, and I called he said he would not include the mile quarter in the deed as that was not in the original deal or covered by the mortgage. I tried to convince him that, we should and glad-

ly, deed this to Mabelle. But he was in no condition to argue the matter then so we had to wait til such time as he would feel better. His right hand was badly swollen and he had to put it hot water to relieve the pain, so it was not very pleasant to disturb him * * *. We therefore are keenly disappointed over our failure to carry this deal through to a happy conclusion * * *. Regarding the mortgage to Harriet, will say that this was not mentioned til Mr. Nordin told me he wanted same, I felt this would cause a bone of contention, so I told Mr. Nordin that we would give it but that I thought the royalty should be assigned first. He advised me that all the royalty should be assigned first * * *. You may rest assured that we will not file our assignments * * *."

It is evident from this letter that the agreement to deed the Mile Quarter to Mabelle F. Charlson was the subject of disagreement on the part of T. E. Charlson. It is also apparent that royalty assignments had been made and that Mr. Nordin indicated that they should be made.

On December 16, 1938, Alvin wrote:

"Dear Carl and All,

"I am enclosing herewith a copy of the letter you wrote us on October 7th which was in answer to my letter of the 5th. I thought that it might not be clear to you just what you had written. It was this letter that gave us the consent and courage as well to proceed, and on the strength of your saying that you were with us 100%. We all make mistakes I know, but if you had only advised us the minute T. E. came home that he was not agreeable to the plan * * *. T. E. said that this 160 A mile quarter was not in the original deal, that is true but it was included in our proposal of the 5th of October * * *."

Further negotiations then took place. T. E. finally agreed to deed the Mile Quarter. On March 11, 1939, Carl wired:

"Have secured compliance of your request."

As of that date negotiations had reached the point where all of the parties were willing that the Mile Quarter be deeded. The royalty assignments had been made December 7, 1938.

■ The plaintiff, Mabelle F. Charlson, claims that under the terms of the resolution the royalty assignments were limited to the California oil and gas lease in existence at the time of the deed issued to her, April 12, 1939; that they were fraudulent because they were permanent, perpetual, oil and gas rovalties; and that the intent of the resolution was to limit them to the lease in existence at the time. The deed was subject to: " * * * twelve and one half per cent oil and gas royalty, which oil and gas royalty has heretofore been assigned." This follows the description of the land. In the habendum clause of the deed it is stated: "to have and to hold the same * * *; that the same are free from all incumbrances save and except as aforesaid." The deed makes no reference to whether the royalty assignments are term or perpetual. It makes no designation or division of them to any person or persons. Nor does it refer to any resolution adopted by the grantor. So no matter how we construe the deed, the royalty assignments outstanding are valid under its terms.

The resolution can only have a bearing upon the agreement reached if its terms constitute the perpetration of fraud upon the plaintiffs.

■ There can be no actual fraud without misrepresentation. 37 C.J.S., Fraud, § 7, p. 223; Powell v. Goldsmith, Tex.Civ. App., 164 S.W.2d 45, 46; Koen v. Cavanagh, 70 Ariz. 389, 222 P.2d 630.

■ The resolution came into being several months after an agreement had been reached; about a year after the plaintiff, Mabelle F. Charlson, had advanced money to the Charlson Estate, a corporation. The record does not disclose that any repre-

sentations were made to Mabelle F. Charlson as an inducement to advance the money to the corporation. She had previously agreed to take a 1% unlimited royalty on the 720 acres. If the terms of the resolution are to be construed as asserted by the plaintiff, Mabelle F. Charlson, then it would have the effect of changing the nature of the agreement. It is manifest from an analysis of the facts that the alleged terms of the agreement contained in the resolution were not based upon any representations or promises made to Mabelle F. Charlson preceding the advance of the money. Its contents even if construed as she contends it should be, did not result in any change of position so far as she was concerned. No actionable fraud is, therefore, involved and the resolution becomes entirely immaterial. Whatever the meaning of the resolution it can have no bearing on the prior agreement and the deed issued pursuant thereto. There was no actual fraud involved in the assignments of the perpetual oil and gas royalties.

The judgment of the trial court is affirmed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.