**Olga S. JOHNSON, Plaintiff and Respondent,**

v.

**Doris M. TOMLINSON, Fern K. Fresonke, Dorothy C. Herberholz, Herman P. Johnson, and Arnold O. Lona, Individually and as Administrator of the Estate of Peter O. Johnson, Deceased, Defendants and Appellants.**

**Civ. No. 8463.**

Supreme Court of North Dakota.

April 25, 1968.

Rehearing Denied July 22, 1968.

R. J. Bloedau, Mott, for appellants.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for respondent.

TEIGEN, Chief Justice.

The defendants have appealed from a judgment setting aside a family settlement agreement. The action was tried to the court without a jury and a trial de novo is demanded on appeal.

The plaintiff, widow of the deceased Peter O. Johnson, seeks to set aside a family settlement agreement executed between herself and the four children of the deceased by a prior marriage. She alleges that her consent to said agreement was procured through fraud, undue influence, and duress. She also named Arnold O. Lona, administrator of the estate of Peter O. Johnson, as a defendant. The trial court found the family settlement agreement had been procured through fraud and undue influence and set the agreement aside.

The plaintiff, Olga Johnson, and Peter O. Johnson were married September 26, 1958. Both had been previously married and each had children, by a former marriage, all of whom were adults and self-supporting at the time of this marriage. The plaintiff was 65 years of age and Mr. Johnson was 74 years of age at the time of the marriage, and it appeared both were in reasonably good health at the time of said marriage. Peter O. Johnson died intestate on June 18, 1965. After the appointment of the defendant Lona, as administrator, the plaintiff and the four adult children of Peter O. Johnson, entered into a family settlement agreement whereby they agreed that the residue of the estate, including all properties held in joint tenancy, be divided equally one-fifth to each. The value of these properties, according to the inventory, is over $240,000.

■ The case is before us for trial de novo. Where a trial de novo is demanded on appeal from the judgment in an action tried to the court without a jury, the appellate court must review the evidence and find the facts for itself, independent of the trial court's finding. In so doing, the findings of the trial court will be given appreciable weight. Burwick v. Saetz, (N.D.) 154 N.W. 2d 679; Spielman v. Weber, (N.D.) 118 N.W.2d 727; Gust v. Wilson, 79 N.D. 865, 60 N.W.2d 202, 38 A.L.R.2d 1371.

■ However, the principle that the appellate court must give appreciable weight to the findings of the trial court will not be used by the appellate court to escape its responsibility in performing its lawful duty of trying anew the facts in the entire case. Thus, although the findings of the trial court are entitled to appreciable weight, it is the duty of the appellate court to review and analyze the evidence and to render a decision based upon the evidence in the case as found by the appellate court. Burwick v. Saetz, supra; Hendricks v. Porter, (N.D.) 110 N.W.2d 421.

## JURISDICTION

The defendants, in their answer, allege that the trial court has no jurisdiction of the subject-matter for the reason that the action was not brought in Hettinger County where the deceased's real estate is located. It appears the deceased's home was at New England in Hettinger County, and was inventoried in his estate at $8,000. The rest of his estate consists of personal property. The action was commenced in Cass County. In addition to seeking a dismissal of the action by its answer the defendants also moved for a change of venue from the Cass County District Court to the District Court of Hettinger County, but prayed in the alternative that venue be changed to Stark County where one of the defendants resides. All of the other defendants reside outside the State of North Dakota. The trial court of Cass County ordered a change of venue from Cass County to Stark County where the defendants renewed their motion to have venue changed to Hettinger County. This motion was denied and the case was tried in the Stark County District Court.

The defendants cite Section 28-04-01, N. D.C.C., which provides:

"An action for any one of the following causes must be brought in the county in which the subject matter of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial upon agreement of counsel or in other cases provided by statute:

1. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest;

* * * "

They argue that the action is an attempt to set aside the family settlement agreement and in this respect is very similar to an action to set aside a fraudulent conveyance; that the action attempts to determine whether plaintiff is the owner of one-fifth or one-half interest in certain real estate; that although the family settlement agreement does not describe the real property, nevertheless, the outcome of the action has a direct bearing on the plaintiff's rights or interests therein; and, that the above quoted

statute makes it mandatory that the action be brought in the county where the subject matter of the action, "or some part thereof," is situated. Therefore, they argue that the action must be brought in Hettinger County, where the real property is situated.

The plaintiff argues that the action acts only against the defendants personally and in no way affects the land; that the deceased's record title to the real property is the same before as it will be after the cancellation of the agreement; that the action is transitory; and, that the judgment to be entered is in personam and not in rem and will only incidentally, and not directly, affect the title to real property.

■■ We find that the sole purpose and object of the action is to cancel and set aside a family settlement agreement due to alleged fraud and undue influence. It is an action in personam, transitory in nature, and therefore properly triable in Stark County, where one of the defendants resides; that the judgment entered in the action will, at most, operate indirectly on the real property situated in Hettinger County. The family settlement agreement constitutes a contract between the parties. It is an instrument by which the parties contract that the residue of the estate shall be divided in a manner other than that provided by the law of succession. Such an agreement is recognized and authorized by statute in this state. Section 30–21–20, N.D.C.C. Since the action is brought to set aside the family settlement agreement, which is a contract, it is one in personam rather than in rem, and is properly triable in the county in which one of the several defendants resides. An action on a contract is, in its nature, transitory and not necessarily local where real property or an estate or interest in real property is only incidentally and not directly affected. 12 C.J.S., Cancellation of Instruments § 50, p. 1022; 13 Am.Jur.2d, Cancellation of Instruments, Sec. 53; 56 Am.Jur. Venue, Secs. 20 & 21, p. 23; and, 92 C.J.S. Venue, § 30(a).

This court held in Hinsey v. Alcox, 38 N.D. 52, 164 N.W. 296, that an action against the principal and sureties, on an attachment bond for damage to real estate as a result of an alleged wrongful levy upon personal property contained within a building, was an action on the attachment bond and not one for injury to realty and therefore it was proper to grant the change of place of trial to the county where the defendants have their domicile. The court reasoned that the main element of damages was a seizing and levying upon the plaintiff's stock of merchandise, hardware and farm implements and the closing of the plaintiff's business, and, therefore, the statute (before amendment) requiring that all actions, "for injuries to real property", must be tried in the county in which the subject of the action or some part thereof was situated, was not applicable.

In Adams v. Little Missouri Minerals Association, (N.D.) 143 N.W.2d 659–684, we said the statute in question does not apply to an action for specific performance or rescission of an agreement to reconvey mineral interests. In Cavalier County v. Gestson, 75 N.D. 657, 31 N.W.2d 787, 2 A.L.R.2d 1254, this court quoted with approval from State ex rel. Nyquist v. District Court, 164 Minn. 433, 205 N.W. 284, as follows:

"The prior decisions may not be entirely consistent in all respects, yet they establish these general rules: That, where the subject-matter of an action is land only, and the primary and principal relief sought relates to the land, the action is local and must be tried where the land is situated; that, where the subject-matter is a contract, and the primary and principal relief sought is to enforce it, or to determine the rights and obligations growing out of it, or to have it annulled as invalid, the action is transitory, and must be tried where the defendant resides, although it may also involve the determination of rights in or title to real estate."

Since the sole purpose and object of this action is to cancel and set aside a family settlement agreement, due to alleged fraud and undue influence, we find it is an action

in personam and hold that the action is transitory in nature and therefore properly triable in Stark County where one of the several defendants resides.

## BACKGROUND

The plaintiff, Olga S. Johnson, is the widow of Peter O. Johnson. The defendants Doris M. Tomlinson, Fern K. Fresonke, Dorothy C. Herberholz, and Herman P. Johnson, are the adult children of the deceased, Peter O. Johnson, by a previous marriage. They will hereafter be referred to by their first names. The defendant Arnold O. Lona is the administrator of the Peter O. Johnson estate. The plaintiff married Peter O. Johnson on September 26, 1958. They lived for a short time in Halstad, Minnesota, to enable her to close her business affairs there. They then moved to his home located at New England, Hettinger County, North Dakota, where they continued to reside. When the plaintiff married Peter O. Johnson he was a retired farmer living alone in his home at New England. Prior to the marriage the plaintiff had resided at Halstad, Minnesota. During the winter of 1958–1959, they spent about two months in Florida and then returned to his home in North Dakota. It appears the marriage was happy and the conduct of the parties congenial. It also appears that the deceased's children continued their relationship with their father after the marriage much the same as they had in the past. His daughter Dorothy lived in the Richardton area for a time and later near Dickinson, North Dakota, and visited her father monthly. His daughter Fern lived in Montana, and made annual visits. His son, Herman, lived in the Minneapolis-St. Paul, Minnesota, area and made occasional visits. His daughter Doris lived in California. She was not present at the trial.

In 1962, the mental and physical condition of the deceased was rapidly deteriorating. The plaintiff cared for him and occasionally found it necessary to call for help. In May of 1963, she found it necessary to commit him to the State Hospital. He was suffering from cerebral arteriosclerosis and diabetes. Prior thereto he had been placed in a nursing home in Dickinson, North Dakota, where he remained only one and one-half days because of his violence. In August of 1963, the plaintiff obtained his transfer from the State Hospital to a nursing home in Jamestown, North Dakota, where he remained until his death on June 18, 1965, except for a period when he had surgery at a Jamestown hospital. The plaintiff and the deceased had been married about six and two-thirds years before he died. Plaintiff also had children by her prior marriage, all of whom were adults, but they do not figure in this case.

The plaintiff, Olga S. Johnson, brought no money or property into the marriage. She owned her home at Halstad, Minnesota, from which she received some rent. She was also receiving Social Security payments and had a net savings of about $3,000. Her funds were kept separately in a bank at Halstad, Minnesota.

The deceased's estate was inventoried and according to the appraisal was valued as follows:

| | |
|---|---|
| Real property, consisting of the home in New England | $ 8,000.00 |
| Personal property (household goods) | 385.00 |
| Stocks and bonds | 109,766.45 |
| Checking account (established in November, 1959, by a deposit of $20,000 in their joint names, but which was converted by Olga Johnson to her name in May of 1963, and after his death, turned over to the administrator of the estate.) | 15,845.20 |
| Total value of estate for probate | $133,996.65 |

In addition there was inventoried, for estate tax purposes, property owned by the deceased jointly with members of his family and appraised in the probate as follows:

| | |
|---|---:|
| Series E Bonds with Dorothy (26 bonds purchased from March, 1945, to April, 1955) | $ 26,127.36 |
| Series E Bonds with Fern (11 bonds purchased from February, 1945, to March, 1950) | 9,753.64 |
| Series E Bonds with Doris (4 bonds purchased in March, 1949) | 4,852.80 |
| Series E Bonds with Herman (7 bonds purchased from April, 1945, to March, 1949) | 6,342.72 |
| Series E Bonds with Olga (2 bonds purchased October, 1961, and July, 1962) | 16,540.00 |
| Series H Bonds with Olga (2 bonds purchased November, 1963, and December, 1964) | 20,000.00 |
| Bank savings account with Olga (established November 18, 1959) | 22,820.49 |
| Total | $106,437.01 |

The total worth of Peter O. Johnson immediately before his death was $240,433.66.

The defendant Arnold O. Lona lives at Moorhead, Minnesota, and since 1949, has engaged in the brokerage business in Fargo. He sells investment securities. He also does considerable income tax work. From 1925 to 1949, he lived in New England and worked in a local bank. He has acted as administrator of several estates. He became acquainted with Peter O. Johnson while he lived at New England. He sold him securities and did his income tax reports. He sold the deceased all the securities in his portfolio except the government bonds. This relationship existed until Mr. Johnson's death. When Peter O. Johnson was ill, Lona had dealings with the plaintiff, Olga Johnson. She asked his advice on income tax matters. He was an honorary pallbearer at the Peter O. Johnson funeral and all of the heirs at law agreed to his appointment as the administrator of the Peter O. Johnson estate. After Lona's appointment as administrator he arranged a meeting between the heirs, the parties to this action, at the Johnson home on September 4, 1965. All of the parties to this action were present at that meeting. The defendant Lona proposed to the heirs that they agree to a division of the residue of the estate in some manner other than that provided by the laws of succession. He had prepared a suggested form of family settlement agreement which he brought with him. It appears that he read this agreement to them but, because it was not acceptable, he destroyed it. The meeting lasted for about two or two and one-half hours and broke up without a settlement being reached. It appears that the children of Peter O. Johnson argued that the residue of the estate and the jointly held properties should be divided equally one-fifth to each but, the plaintiff, Olga Johnson would not agree. She insisted that she was entitled to one-half of the estate as provided by the law of succession. The following day the defendant Lona and the plaintiff, Olga Johnson, met at the home of the deceased, at which time she agreed to the arrangement proposed by the heirs. The defendant Lona then went back to his motel where he was temporarily staying; drew a family settlement agreement which he entitled "Stipulation"; returned to the deceased's home; and, exhibited it to the plaintiff,

Olga Johnson, whereupon she read and agreed to it. She then signed eight copies of the agreement and returned them to Lona to secure the signatures of the children of the deceased. The family settlement agreement was subsequently signed by the children and a copy was furnished to each of the parties to this action; one was filed with the probate court in which the estate was being probated; one was given to the attorney handling the probate; and, one was retained by Mr. Lona the administrator. This family settlement agreement is as follows:

"THIS STIPULATION entered into by the Heirs in the

ESTATE OF PETER O. JOHNSON, New England, North Dakota

who are Olga S. Johnson, wife of the deceased, and Doris M. Tomlinson (daughter) Fern K. Fresonke (daughter) Dorothy C. Herberholz (daughter) and Herman P. Johnson (son)

In view of the fact no recent will executed by the deceased has been found, and it appears none was made, we the heirs arrive at the following conclusions:

1. The Children of Peter O. Johnson, truly admire the devotion given their father in his last years by Olga S. Johnson, and it is their sincere wish she be provided with sufficient worldly goods, so she may live in comfort her remaining years.

2. Olga S. Johnson has had the deepest admiration for the Children of Peter O. Johnson, and has dedicated her years of marriage to the deceased, in preserving his property, and giving the children love and affection.

3. In view of these facts, we the heirs of the Estate of Peter O. Johnson, do hereby declare that the assets be grouped in a lump sum (joint tenancy disregarded) and the Estate, after all expenses have been paid, be divided as follows:

1/5 to Olga S. Johnson

1/5 to Doris M. Tomlinson      1/5 to Dorothy C. Herberholz
1/5 to Fern K. Fresonke      1/5 to Herman P. Johnson

Eight copies of this instrument have been made, and signed by the heirs, and are to be delivered as follows: Original to Probate Court: one copy to each of the heirs, one copy to the Attorney for the Estate, and one copy to the Administrator.

And may this instrument be terminated with the words of the Golden Rule—'Do unto Others as you would have them do unto You.'

Dated this 4th day of September, 1965, at New England, North Dakota.

s/_____ Olga S. Johnson

s/_____ Doris M. Tomlinson

WITNESSES:      s/_____ Fern K. Fresonke

s/ Arnold O. Lona      s/_____ Dorothy C. Herberholz

s/ Mike Herberholz      s/_____ Herman P. Johnson".

On January 14, 1966, the plaintiff, Olga Johnson, by her attorney, notified the county court in which the estate was being probated, by letter, that she had decided to reject the family settlement agreement of September 4, 1965, for the reason that it had been obtained by fraud and duress. On September 13, 1966, the present action was commenced.

## FRAUD, UNDUE INFLUENCE, AND DURESS

It is the contention of the plaintiff that the statements and conduct of the defendants, coupled with the fiduciary and confidential relationship of the defendant Lona at the September 4, 1965, meeting, constituted acts of fraud, undue influence, and duress, which induced the plaintiff to sign the family settlement agreement against her will. The plaintiff's counsel, in his argument to this court, points up five statements made to induce her to sign the agreement which it is claimed were untrue. They are set forth in the brief in this appeal as follows: (1) that her marriage to Peter O. Johnson was invalid; (2) that the marriage could be annulled; (3) that there could be litigation over an existing will; (4) that the plaintiff had destroyed the deceased's last will and testament; and, (5) that there could be a lawsuit involving the manner in which the estate should be distributed.

It is a well-settled principle of law that, when free from fraud and misrepresentations, courts will look with favor upon family agreements in settlement of estates. Zimmerman v. Kitzan, (N.D.) 65 N.W.2d 462. And, if creditors are not involved, family settlement agreements of estates will be enforced by the courts regardless of whether the settlement follows the law of descent and distribution. Muhlhauser v. Becker, 76 N.D. 402, 37 N.W.2d 352.

The county courts of the state which handle probate matters are authorized by statute to make distribution of the estate of a decedent in accordance with agree-ments entered into by the heirs, legatees, or devisees interested therein. Section 30–21–20, N.D.C.C.; Muller v. Sprenger, (N.D.) 105 N.W.2d 433.

"Family settlements are favored, and will be upheld in the absence of fraud; * * *."

15A C.J.S. Compromise and Settlement, § 3(b).

"Compromises and settlements among heirs, distributees, devisees, and legatees of a decedent's estate will be enforced if made between persons having the legal capacity to contract."

31 Am.Jur.2d Executors and Administrators, Sec. 12.

The plaintiff asserts that the events of September 4, 1965, constitute actual fraud and undue influence and that such acts induced the plaintiff to sign the family settlement agreement. The complaint alleges actual fraud. The elements of fraud are set forth in several North Dakota cases. In Zimmerman v. Kitzan, supra, we held at Syllabus #1:

"As a general rule actual fraud cannot be presumed but must be proved affirmatively by the one who relies upon it." And, at Syllabus #2:

"Fraud does not exist as a matter of fact when intent to deceive does not exist.

It is the action of the mind which gives fraud its existence."

See also City of Granville v. Kovash, Incorporated, (N.D.) 118 N.W.2d 354; Charlson v. Charlson Estate, (N.D.) 75 N.W.2d 321. In the last cited case we held:

"There can be no actual fraud without misrepresentation."

In Leach v. Kelsch, (N.D.) 106 N.W.2d 358, we held that to constitute actionable fraud, representations must be made with knowledge of their falsity and with the intent to deceive, and that the plaintiff must show that he relied upon the

representations made; that fraud is not presumed but must be proved. See also, Chester v. Einarson, 76 N.D. 205, 34 N.W. 2d 418, rehearing denied at 35 N.W.2d 137.

■ The burden of proving fraud rests on the party asserting it. City of Granville v. Kovash, Incorporated, supra; Leach v. Kelsch, supra; Pauly v. Haas, (N.D.) 84 N.W.2d 302; Zimmerman v. Kitzan, supra; and Chester v. Einarson, supra.

We have examined the evidence in the light of the principles set forth above and find the assertions of fraud, made by the plaintiff, upon which she relied, do not sustain her claims, nor do they sustain the claims made by her counsel in his argument to this court. The plaintiff testified that the statements made at this meeting caused her to become shaky, frightened and nervous. These statements she attributed to various children present at the meeting and are as follows:

"She said I married her dad for his money."

* * * * * *

" * * * What will your nice children in Fargo say or think if you don't accept this. * * *"

* * * * * *

"You ought to be ashamed of yourself."

* * * * * *

"He said something about they could annul my marriage and pay me off as a nurse."

* * * * * *

"You disgraced us so by sending our father to the State Hospital."

When asked what effect these statements had upon her, she testified: "Well, you know I had never had known of them being like that because they were always so nice to me. I got just so terribly shook up."

Each of the defendant children and the defendant Mr. Lona were called as witnesses by the plaintiff. Each described in detail what occurred and what was said at the meeting of September 4, 1965. There is no doubt but what the meeting was heated and that strong language was used. However, it is clear that throughout the period the plaintiff continuously advised the group that she was entitled to one-half of the estate and made no concessions whatever. Toward the end of the session, the defendant Lona prepared to leave. The plaintiff testified that he asked: "Do you want me to come back tomorrow?", to which she answered: "Yeah, I said you can come back." It appears the defendants then left the plaintiff's home at about 4:30 p. m. No agreement had been reached.

On the evening of September 4, 1965, following the family meeting, the plaintiff invited two friends to her home. These friends were a Mr. Botheim and a Mr. Harding, and she discussed the events of the day with them. However, she testified that she did not arrive at a decision as a result of her conversation with these friends. She testified she knew that she was entitled to one-half of the estate under the law of North Dakota, and that she had been so advised, by letter, from Mr. Bloedau, the attorney for the administrator. The following day she made her decision and advised the defendant Lona that she would sign a family settlement agreement and agree to a division of the property of the estate including the jointly held properties, in equal shares, one-fifth to each. Mr. Lona then left; prepared the family settlement agreement which we have set forth above; and, returned to the plaintiff's home where she signed it. The evidence does not support the contention that she relied upon the statements made by the defendants or any of them in making this decision, nor does the evidence permit a finding that the statements of which she now complains were made with intent to deceive her.

The plaintiff is a high school graduate; she had worked in the retail store of her first husband for a number of years;

she had also purchased produce. She had been employed for many years doing market research for the National Analysts of Chicago, and for which company she also selected and trained other personnel to work under her supervision in several counties in a two-state area, doing market research. She was also a census-taker in 1940. She did not state, nor is there any indication from the evidence, that she was deceived by the statements of which she now complains.

After the family settlement agreement had been entered into there were numerous friendly letters exchanged and it appears that she desired to live up to the agreement. On January 12, 1966, she had a conversation with the defendant Lona and told him explicitly that she was going to stay by her agreement. However, only two days later, on January 14, 1966, a letter was directed to the judge of the county court in which the estate was being probated, to the effect that she had decided to reject the family settlement agreement on the grounds that it had been obtained by fraud and duress.

■ We do not feel that the evidence supports her claim of undue influence. There are three indispensable factors involved in the establishment of undue influence. They are as follows: (1) a person who can be influenced; (2) the fact that improper influence was exerted; and, (3) submission to the overmastering effect of such unlawful conduct. Seaborn v. Kaiser, (N.D.) 117 N.W.2d 863; Hendricks v. Porter, (N.D.) 110 N.W.2d 421; and, Johnson v. Johnson, (N.D.) 85 N.W.2d 211.

In Ireland v. Charlesworth, (N.D.) 98 N.W.2d 224, we said:

"The degree of persuasion which amounts to undue influence is that which dominates the mind or the emotions of the person persuaded to the extent that the agreement to a contract by such person is not the result of a freely exercised and competent judgment."

■ Whether a fiduciary or confidential relationship existed between the defendant Lona and the plaintiff is not material to the decision of this action, because it is clear from the evidence that the plaintiff was not impressed by such a relationship nor that she was influenced thereby. It is clear that she exercised an independent judgment in making the decision to sign the family settlement agreement. Further, it is indicated from her testimony that the defendant Lona did not attempt to influence her to agree to a one-fifth division. She was asked on direct examination by her attorney the following questions to which she gave the following answers:

"Q Did Lona ask you several times that if you could take a fifth of the estate?

"A No, he didn't say it that way.

"Q How did he say it?

"A How much do you want of this estate?

"Q And what did you answer him?

"A One-half.

"Q And was that type of statement made by him several times?

"A It was three or four times.

"Q And was the same answer given by you?

"A Every time the same answer."

The testimony establishes that the plaintiff continuously refused to enter into an agreement on September 4; that she had independent advice from two friends that evening, but that she still had not made her decision; that the decision was not made until the following day when she advised the defendant Lona that she would sign such an agreement, which she did after he had gone to his motel to draw it, returning later in the day with the proposed form.

There is no evidence in the record, nor is there any claim made that the plain-

tiff was not mentally alert and strong or that she was incapable of understanding or making intelligent decisions. Her testimony, on the other hand, indicates that she was mentally alert and that she demonstrated that she made her own decision after due consideration.

Although duress is also charged, there is no evidence in the record to substantiate a conclusion that the consent of the plaintiff to the contract was procured through duress.

■ For the reasons set forth herein, we find that the plaintiff has failed to sustain the burden to prove fraud, undue influence, or duress, and having failed in this burden, cannot prevail in this action. For these reasons, the judgment of the trial court must be reversed and judgment entered dismissing the action.

STRUTZ, ERICKSTAD, KNUDSON and PAULSON, JJ., concur.

On Petition for Rehearing.

TEIGEN, Chief Justice.

■ The plaintiff has petitioned for rehearing. She raises two points. The first deals with the presumption of undue influence which she claims arises by virtue of Section 59–01–16, North Dakota Century Code. This section provides that all transactions between a trustee and a beneficiary, during the existence of the trust by which he, the trustee, obtains any advantage from a beneficiary, are presumed to be entered into by the beneficiary without sufficient consideration and under undue influence. The plaintiff's claim is based on the fact that Lona was the administrator of the estate of Peter O. Johnson, deceased, and that the plaintiff is an heir. This is not a new argument. It was raised in the original brief and considered by the court as not being applicable in this case. It was not overlooked as the plaintiff suggests. We adhere to our decision in the original opinion. Lona does not obtain any advantage

from the plaintiff because she signed the family settlement agreement. Lona as administrator of the estate, with or without the agreement, receives no additional benefits and no advantage from the plaintiff. The family settlement agreement merely provides for a division of property between the heirs in the estate. The administrator Lona is not a party to the agreement. This statute has no application.

Secondly, the plaintiff, in her petition, quotes from the opinion as follows:

"The following day she made her decision and advised the defendant, Lona, that she would sign a family settlement agreement and agree to a division of the property of the estate including the jointly held properties, in equal shares, one-fifth to each."

She argues that an examination of the transcript and all of the documents relating to the appeal, and the appellants' statements of the issues, did not establish any factual basis for the proposition that she agreed to a division of the "jointly held property." She argues in her petition that this question remains to be determined. She states it "may or may not" be a question in the county court, or an appeal therefrom, or it "may or may not" be the subject of a separate action.

The family settlement agreement is set forth in the original opinion. The salient part thereof provides:

"3. In view of these facts, we the heirs of the Estate of Peter O. Johnson, do hereby declare that the assets be grouped in a lump sum (joint tenancy disregarded) and the Estate, after all expenses have been paid, be divided as follows:"

\*　　\*　　\*　　\*　　\*　　\*

This is an issue which the plaintiff did not raise, either at the trial of the action in the lower court, or on appeal. It is interesting to note that in paragraph IV of the plaintiff's complaint in this action, she alleges that the agreement obtained by

fraud and duress, " * * * purports to take from plaintiff property owned in joint tenancy between Peter O. Johnson and plaintiff and as to property owned between the parties in joint tenancy with right of survivorship or payable on death to plaintiff is entirely void and of no force and effect and said agreement as fraudulently obtained is additionally without any consideration whatsoever as to the property in the estate of Peter O. Johnson and as to property jointly owned with right of survivorship or jointly owned or payable to plaintiff on death." Further, in the defendant's brief as respondent in the appeal, beginning on p. 97 thereof, she states that it is necessary for her to show in this action that she was damaged. She then proceeds to point out the manner in which she was damaged by setting forth a schedule of the assets of the estate, together with their values, and showing the distribution, if made under the laws of succession, and adds thereto the value of the property held in joint tenancy with the deceased, or payable on death, thus showing a total amount received by each in the event the family settlement agreement is set aside. Then, in comparison to these amounts, she adds to the assets of the estate the value of all the properties held jointly and/or payable on death and subtracts therefrom the expenses of probate and divides the balance by five to establish the amount that the plaintiff will receive if the family settlement agreement is sustained. Because this amount is smaller than the amount she would receive if the family settlement agreement were set aside, she argues it justifies her standing in court as being damaged. It is clear that both parties, for the purpose of this action, construed the family settlement agreement as including the jointly held properties and those payable on death as being included in the division to be made if the agreement was held to be valid.

The complaint contains no alternative prayer asking for a construction of the agreement if it is declared valid, nor was this issue presented to the trial court or to this Court on appeal. It is raised for the first time in this petition. This action was instituted for one purpose, to-wit: an attempt to set the family settlement agreement aside as being null and void in its inception on the ground that it was obtained by fraud, duress and undue influence. We ordered the action dismissed. No issue was raised by the pleadings and no issue arose at the trial relative to the construction to be placed on the instrument or the property. The judgment on remittitur to be entered dismisses the complaint and adjudicates that the family settlement agreement will not be set aside on the grounds of fraud, duress, or undue influence in its inception, and no more.

The petition for a rehearing is denied.

PAULSON, KNUDSON, STRUTZ, and ERICKSTAD, JJ., concur.