**NORTH VALLEY WATER ASSOCIATION, INC., Plaintiff and Appellee,**

**v.**

**NORTHERN IMPROVEMENT COMPANY and Fireman's Insurance Company of Newark, New Jersey, Defendants and Appellants,**

**KBM, Inc., a North Dakota corporation, formerly known as K.B. Mackichan and Associates, Inc., CertainTeed Products Corporation and CertainTeed Corporation, Defendants.**

**Civ. No. 870149.**

Supreme Court of North Dakota.

Nov. 19, 1987.

As Corrected Dec. 10, 1987.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellants; argued by Pamela J. Hermes.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee; argued by Maureen Holman.

Vinje & Engelman, PC, Mayville, for defendants.

ERICKSTAD, Chief Justice.

This is a venue dispute. Northern Improvement Company (Northern) and Fireman's Insurance Company appeal from an order denying Northern's motion for a change of venue. Plaintiff-Appellee North Valley Water Association (Water Association) initiated the civil suit in Pembina County and Northern Improvement subsequently made a motion for change of venue

to Cass County. The district court denied the motion and Northern appealed to this Court. We reverse.

Water Association's complaint is based on Northern's alleged "faulty workmanship ... false ... [representations], breaches of contract and negligence ..." in connection with the construction and installation of an underground water pipeline. A part of the water pipeline is buried in Pembina County. Water Association sued the manufacturers of the pipe, CertainTeed Products Corporation and CertainTeed Corporation, under implied and express warranty theories. Water Association also sued KBM, Inc., the engineering firm for the project, for breach of implied and express warranties.

It is undisputed that Northern's principal place of business is Cass County, North Dakota. Moreover, Water Association does not dispute Northern's assertion that Northern is not now, nor was it transacting business in Pembina County at the time of commencement of this action. Section 28–04–04, N.D.C.C.,[1] is therefore inapposite.

The parties' disagreement on this appeal is whether venue is governed by the general rule of venue in § 28–04–05, N.D.C.C., or a specific rule of venue found in § 28–04–01(2). The general provision in § 28–04–05 states:

"*28–04–05. Actions having venue where defendant resides.*—In all other cases, except as provided in section 28–04–03.1, and subject to the power of the court to change the place of trial as provided by statute, *the action shall be tried in the county in which the defendant or one of the defendants resides at the time of the commencement of the action.*" [Emphasis added.]

The relevant exception in § 28–04–01 reads:

"*28–04–01. Venue of actions relating to real property.*—An action for any one of the following causes must be brought in the county in which the subject matter of the action, or some part thereof, is

---

1. Section 28–04–04, N.D.C.C., reads:
" *28–04–04. Venue of actions against domestic corporations.*—An action against a domestic cor-

poration shall be tried in the county designated in plaintiff's complaint if such corporation transacts business in that county."

situated, subject to the power of the court to change the place of trial upon agreement of counsel or in other cases provided by statute:

\* \* \* \* \* \*

2. *For injuries to real property;* ..." [Emphasis added.]

Water Association argues subsection 2 of § 28–04–01 is controlling because Northern's alleged "faulty workmanship" damaged the underground water pipes, which are arguably real property under § 47–01–03, N.D.C.C.[2] Water Association further argues the defects in the water pipe, and the accompanying disturbance of the ground necessary to repair the pipe is an injury to real property within the meaning of § 28–04–01(2). The trial court adopted this analysis in its memorandum opinion. We respectfully disagree. While case law interpreting § 28–04–01(2) is sparse, we believe a reading of *Johnson v. Tomlinson*, 160 N.W.2d 49 (N.D.1968) and *Hinsey v. Alcox*, 164 N.W. 296, 38 N.D. 52 (1917), considered in light of the modern trend of venue decisions in other states requires a different result.

The trial court points out correctly the common law distinction between "local" and "transitory" actions. It also recognizes the distinction between actions *in personam* and actions *in rem*. Actions *in personam* sought relief from the person of the defendant and were transitory; actions *in rem* sought relief which operated directly on the land and were required to be initiated where the land was located. *See Mueller v. Brunn*, 105 Wis.2d 171, 313 N.W.2d 790, 793 (1982).

We recognized these common law distinctions in *Johnson v. Tomlinson*, 160 N.W.2d 49. *Johnson* involved a suit to set aside a family settlement agreement on grounds of fraud and duress. The defendants argued that a determination of the agreement's validity would have a direct bearing on the plaintiff's right or interest in decedent's real property. Thus, the defendants ar-

gued, the action must be brought where the real property is located. *Johnson* at 53.

We rejected defendant's argument in *Johnson*, explaining:

"We find that the sole purpose and object of the action is to cancel and set aside a family settlement agreement due to alleged fraud and undue influence. It is an action in personam, transitory in nature, and therefore properly triable in Stark County, where one of the defendants resides; that the judgment entered in the action will, at most, operate indirectly on the real property situated in Hettinger County.... An action on a contract is, in its nature, transitory and not necessarily local where real property or an estate or interest in real property is only incidentally and not directly affected." 160 N.W.2d at 49.

The essential character of Water Association's suit is breach of contract. The physical damage to the pipeline is an incidental consequence of the alleged breach of contract. Water Association seeks money damages against the defendants. Water Association's judgment "will, at most, operate indirectly on the real property situated in [Pembina] county." *Johnson* at 53.

The trial court interpreted the phrase "injuries to real property" in § 28–04–01(2), N.D.C.C., in this manner:

"The alleged defective pipeline products have caused a disturbance to the easement right by requiring that the real property; (ie., soil), be opened to repair the leaks and breaks caused by the alleged defective product. *The Court finds that the easement is a part of the real property and the injury has occurred to the real property to which the waterline is affixed. Consequently, the Court finds that there is 'injuries to real property.'*" [Emphasis added.]

Neither party has referred us to *Hinsey v. Alcox*, 164 N.W. 296, notwithstanding

---

**2.** Section 47–01–03, N.D.C.C., reads:

" *47–01–03. 'Real property' defined.*—Real or immovable property shall consist of:

1. Land;

2. That which is affixed to land;

3. That which is incidental or appurtenant to land; and

4. That which is immovable by law."

the fact that *Hinsey* directly addresses the phrase "injuries to real property" within the context of proper venue. The plaintiff in *Hinsey* was the owner of a general hardware and farm implement business. The sheriff allegedly served a warrant of attachment on the plaintiff's store and merchandise. *Hinsey* at 296. The sheriff seized plaintiff's merchandise. The sheriff also closed and fastened shut the doors and windows of plaintiff's building. *Id.*

The plaintiff in *Hinsey* sued on the attachment bond and contended the action was for the "recovery for injuries to real property." *Hinsey* at 297. The alleged "injury to real property" in *Hinsey* was the sheriff's interference with the plaintiff's right to possession of his building.

This Court rejected the plaintiff's contention that his action was for injuries to real property:

"With this contention we cannot agree. The action is one upon an attachment bond. The main element of damages, if any, in plaintiff's cause of action upon which damages were based, is the seizing and levying upon plaintiff's stock of merchandise, hardware, and farm implements, and the closing of plaintiff's business, and the alleged destruction of the same by reason of the alleged wrongful attachment." *Hinsey v. Alcox,* 164 N.W. at 297.

The *Hinsey* court examined the nature of the plaintiff's action and determined the action was essentially an action for wrongful attachment of the plaintiff's personal property, not for injuries to real property. The alleged "injury to real property" in this case is that, because of Northern's negligence and breach of contract, *inter alia,* Water Association must excavate the ground beneath the waterpipe and make the necessary repairs. The alleged "inju-

ries to real property" in the instant suit are no more direct injuries to the land than in *Hinsey.* Section 7415 of the North Dakota Compiled Laws (1913) was directly in issue in *Hinsey.* Section 7415 of the North Dakota Compiled Laws (1913) is an antecedent to § 28–04–01.

We hold that the alleged defects in the pipeline resulting from defendants' alleged breach of contract are not the type of injuries to real property contemplated by § 28–04–01(2). Our construction of § 28–04–01(2) is admittedly narrow, but is consistent with the rationale of our past decisions and with the apparent trend in other states. *See, e.g., Coastal Mall, Inc. v. Askins,* 265 S.C. 307, 217 S.E.2d 725 (1975) (breach of contract action for alleged failure to properly construct canopy was not injury to real property within South Carolina's venue statute); *Mueller v. Brunn,* 313 N.W.2d 790 (contamination of water well due to another's negligence not injury to real property within the meaning of Wisconsin venue statute); *American Advertising Co. v. State, Etc.,* 280 N.W.2d 93 (S.D.1979) (action to recover for damages to billboards, assuming plaintiff owned land on which billboards were situated, was not an action for injuries to real property under South Dakota venue statute.)

An impressive historical review of the so-called "local action rule" is found in *Mueller v. Brunn,* 313 N.W.2d 790. In *Mueller* the court reviewed the purpose of injury-to-land venue statutes and concluded they had limited usefulness under the modern trend. It traced the action for injuries to land to the common law action of *trespass quare clausum fregit,* which involved an unlawful entry or trespass upon land.[3] In this case, Water Association is not suing Northern for an unauthorized entry upon the land.

---

**3.** See § 801.50(1)(a) (1977) Wis.Stat. which reads:

"*801.50 Place of trial*

"Except as provided in section 220.12 and subject to the provisions for change of venue the proper place of trial of civil actions is as follows:

"*(1) Where subject of action situated.* Of an action within one of the four classes next fol-

lowing, the county in which the subject of the action or some part thereof is situated: (a) For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such estate or interest, or for an injury to real property."

Wisconsin subsequently amended § 801.50 in 1984.

The *Mueller* court's analysis is instructive on this point:

"In the instant case the claim of the plaintiffs against the Town of Vernon is for the contamination of the Muellers' well water as the result of the seepage from the Town of Vernon's storage of road salt, allegedly stored in a negligent manner on adjacent property. It is apparent that the circumstances alleged in this complaint are not those typically attributed to *trespass quare clausum fregit*. *The damages are not direct as in trespass, but are consequential* as in trespass on the case, which, under some interpretations of ancient law, was a transitory and not a local action. In addition, and most importantly—and the fact upon which we hinge our decision—is that the pollution of water as a consequence of another's negligence does not fit neatly into the time-honored slot of injury to real property. By some rationales it could be argued that damage to real property includes damage to any of those 'interests in real property' as defined in sec. 840.01, Stats. To so argue is not unreasonable, *but because the clear tendency of the law and the rationale of courts which have considered this question is to limit local actions rather than to expand them,* we decline to hold, in the context of the venue statutes, that water pollution constitutes an 'injury to real property.'" [Emphasis added.] 313 N.W.2d at 798.

We agree with this analysis.

We said in *Keating v. Keating,* 399 N.W. 2d 872, 875 (N.D.1987) that the trial court, pursuant to § 28–04–07(3), N.D.C.C., may change venue to promote the "convenience of witnesses and the ends of justice." We noted further, however, that "proper practice requires such showing to be presented in the court in which the defendant has a right to have the case heard." *Id.* In this case, the district court of Cass County may consider a motion for change of venue pursuant to § 28–04–07(3), N.D.C.C.

Our decision today amplifies the need for legislative consideration of the venue statutes. In our view, the legislature should study North Dakota's venue statutes in light of possible benefits that could be derived from the application of the principles of *forum non conveniens* and the ability to adjust procedural inequities through our rule making authority.[4]

The order denying Northern's motion for change of venue is reversed with costs on appeal awarded to the appellant.

MESCHKE, J., and PEDERSON, Surrogate Justice, concur.

GIERKE and VANDE WALLE, JJ., concur in the result.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

MESCHKE, Justice, concurring.

I concur. I write separately only to highlight the call for change of the venue statutes. NDCC Ch. 28–04 is a legal thicket of deadwood and obscure underbrush. It should be revised, or repealed and replaced by modern procedural rules about the place of trial.

A nearsighted view of NDCC 28–04–04 expressed in *City of Granville v. Kovash, Incorporated,* 96 N.W.2d 168 (N.D.1959) illustrates a statutory limitation about the place of trial, one that necessitates this

---

**4.** Justice Heffernan, today Chief Justice of the Wisconsin Supreme Court, ended the *Mueller* opinion with reference to a law review comment which is appropriate here:

"[T]he ends of justice would be better promoted by giving the courts a free rein to balance the relative conveniences of all concerned in a lawsuit; then, if the result of such a balancing test so indicates, those courts should be encouraged to apply the doctrine of *forum non conveniens* with increased liberality. Obviously, such flexibility precludes the use of the old, rigid approach to venue. However, the reasons for and the feasibility of such an approach have been superseded by the complex face often presented by litigation today. A frank recognition of the real justification for venue statutes requires such a flexible approach, rather than the superimposition of more patchwork on the existing crazy quilt.' *Sorter, Comment, Venue Problems in Wisconsin,* 56 Marquette Law Rev. 1972–73, 87, 117." 313 N.W.2d at 799.

decision. The opinion of the Chief Justice says NDCC 28–04–04 is inapposite to this case, but it should be applicable. A company which has physically performed work in a county should ordinarily be suable there about its work. Generally, it will be the most convenient place to judicially examine the contract performance.

Also, the first trial court to address a case, not the second, should determine the most convenient forum. Chief Justice Erickstad advocated that, as a better use of judicial resources, in his dissent in *American State Bank of Dickinson v. Hoffelt*, 236 N.W.2d 895 at 900 (N.D.1975). I believe that view is sound and should be adopted, either by reconsideration or rule-making, if legislation does not repeal or reform our outmoded venue statutes.